John W. CASTRO, Sr., Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–84–378.

Court of Criminal Appeals of Oklahoma.

Aug. 28, 1987.

As Corrected Oct. 6, 1987.

Rehearing Denied Nov. 24, 1987.

Thomas Purcell, Asst. Appellate Public Defender, Norman, for appellant.

Robert Henry, Atty. Gen., Terry J. Jenks, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

John Walter Castro, Sr., the appellant, was convicted of Robbery With Firearms (21 O.S.Supp.1982, § 801), and First Degree Felony-Murder in the commission of Robbery With A Dangerous Weapon (21 O.S. 1981, § 701.7(B)). Appellant was tried by jury in Kay County District Court, Case No. CRF–83–130, before the Honorable Roger Mullins. The jury recommended a sentence of life imprisonment for robbery, and a sentence of death for felony-murder. Judgment and sentence was imposed in accordance with the jury's verdict. We affirm the sentence of death for felony-murder, and vacate and remand the judgment and sentence for robbery with firearms.

On June 6, 1983, during the early afternoon, the appellant entered a fast-food restaurant called Hobo-T's located in Ponca City, and pointed a .25 semi-automatic pistol at the sole employee-manager, Rhonda Pappan. At some point, while the appellant was going through Pappan's purse, a money bag, and the cash register, Pappan allegedly obtained a knife and, following a struggle, the appellant stabbed her to death. Appellant was not injured during the struggle, and he escaped with an undetermined amount of money estimated at over $200.00. A knife was discovered under the victim's body. An autopsy revealed that Mrs. Pappan died from multiple stab wounds to the neck, back, and chest.

Police investigation of the crime resulted in the apprehension of the appellant on the night of June 6, 1983. After the appellant signed a consent to search form, officers seized several items following a search of the appellant's home, including several pairs of jeans, a baseball cap, and a Titan .25 semi-automatic pistol, all with blood stains which could not be typed. A hair found on a blood-stained man's sportshirt

found at the scene was consistent with the appellant's hair. After the search, appellant voluntarily accompanied the officers to the police station for questioning. After the appellant was read his *Miranda* rights, and signed a form acknowledging that he understood those rights, he told officers that he had never been at a restaurant called Hobo-T's. Appellant then changed his story, claiming that when he had entered the restaurant he saw the victim lying in a pool of blood on the floor. He said he became frightened because he was carrying a gun, that as he started to leave he slipped and fell in the blood and because of that, he took his shirt off and threw it down. In his third statement, appellant said that he entered Hobo-T's with an unloaded Titan .25 semi-automatic pistol, intending to commit a robbery, and that he stabbed Pappan to death after she pulled a knife on him while he was removing money from the cash register.

Appellant presented no witnesses in his defense during the first stage of the trial. At the second stage of trial, the State alleged the existence of two aggravating circumstances: (1) the murder was especially heinous, atrocious, or cruel; and (2) the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. *See* 21 O.S. 1981, § 701.12(4) & (7). The State produced evidence that the appellant had escaped from the Kay County jail when he was let out by two other prisoners who overpowered the guards on August 28, 1983, and that he had confessed to committing a prior murder in Stillwater, and two prior armed robberies in Ponca City. Appellent testified that he was twenty-three years old, and that the third statement he gave to police was accurate, although he was unaware of what occurred after the struggle started. Appellant admitted escaping, and robbing two Ponca City stores, but said that he did not harm any employees. He admitted killing Ms. Beulah Cox in Stillwater and Ms. Rhon-

da Pappan in Ponca City, but he did not know why. He said that he thought there was something wrong with his mind. Appellant testified concerning his troubled youth, including being raised by his poor grandparents, finding out that his mother was a prostitute, being seduced by his mother, and witnessing his brother bludgeon his father to death. The appellant expressed remorse for the killings, and said "I think I deserve to die." Laura Tucker, appellant's aunt, testified extensively concerning the appellant's troubled childhood, his experience with the police during his youth, his placement in state institutions, the stress he was under because his family refused to accept his wife, and stated that the appellant had served in the armed forces. The jury found the existence of both aggravating circumstances.

I.

## PRE-TRIAL ISSUES

### A.

In his third assignment of error, the appellant asserts that the trial court erred in refusing to provide funds for a psychiatrist.[1] In a pretrial motion hearing, defense counsel stated that he had "employed Dr. [William] Hamilton ... to provide a psychiatric evaluation" of the appellant, and that Dr. Hamilton "certainly should be paid a reasonable fee in this case **for the work that he has done."** (Mot.Tr. Dec. 14, 1983, at 9–11) (emphasis added).

■ The foregoing indicates that appellant actually had access to a psychiatrist in spite of his indigency, and that his request for funds was to cover a past examination. In addition, the appellant was examined at Eastern State Hospital in Vinita and found competent to stand trial and able to assist in his defense. Both psychological examinations concluded that the appellant was "in touch with reality." *Pre-Sentence Investigation Report,* at 8.

---

1. Effective July 8, 1985, a criminal defendant raising questions of mental illness or insanity at the time of the offense must file an application with the trial court at least twenty (20) days before trial. *See* 22 O.S.Supp.1985, § 1176(A). The procedure to follow for review of such an application is the same as that provided in 22 O.S. 1981, § 1175.3. *Id.*

Moreover, the record reveals that appellant wholly failed to make an **ex parte** preliminary showing to the trial judge that his sanity at the time of the offense was likely to be a significant factor at trial as required by *Ake v. Oklahoma*, 470 U.S. 68, 82–83, 105 S.Ct. 1087, 1097, 84 L.Ed.2d 53 (1985). Mere undeveloped assertions that psychiatric assistance would be beneficial is insufficient to meet the preliminary showing requirement in *Ake*. At a minimum, *Ake* requires that the defendant's allegations be undergirded with evidentiary support and particularized facts demonstrating that the defendant's sanity at the time of the offense is seriously in question. *See Caldwell v. Mississippi*, 472 U.S. 320, 323–24 n. 1, 105 S.Ct. 2633, 2637 n. 1, 86 L.Ed.2d 231 (1985); *Cartwright v. Maynard*, 802 F.2d 1203, 1211–12 (10th Cir. 1986). The State did not introduce any psychiatric evidence against the appellant. We find that the trial court did not err in refusing to provide funds for a psychiatrist, since the appellant failed to make the preliminary showing required by *Ake*,[2] and the record shows that appellant in fact had access to a competent psychiatrist.

### B.

Next, we address appellant's related argument that the holding in *Ake* guarantees a defendant the right to put on a defense, including funds necessary to investigate and produce the testimony of lay witnesses. In a pretrial motion hearing, defense counsel requested "expense money in order to continue the interview of witnesses and the preparation for trial." Counsel for appellant explained that witnesses familiar with the appellant's background were located in Oklahoma City and Red Rock, and that funds were needed for travelling and interviewing expenses. Appellant has failed to cite any relevant authority to support his assertion, except for the *Ake* decision. In *Standridge v. State*, 701 P.2d 761, 764 (Okl.Cr.1985), this Court left open the

question of whether the *Ake* holding extended to assistance "other than a psychiatric expert."

Counsel was entitled to seek reimbursement for extraordinary and additional expenses incurred in the representation of his indigent client upon a showing by clear and convincing evidence that he was unable to maintain his law practice, and that such extraordinary actions were necessary, reasonable, and taken in good faith. *See Bias v. State*, 568 P.2d 1269, 1272–73 (Okla. 1977). We cannot agree that bald assertions of need alone are sufficient to warrant an award of public funds, especially where counsel failed to show that personal contact was the only way to obtain the information desired, as opposed to such alternate methods as mail, telephone or subpoena. *See Johnson v. State*, 731 P.2d 993, 1007 (Okl.Cr.1987). Because appellant has failed to show that the foregoing alternatives were inadequate to afford him the basic tools of his defense within the meaning of *Ake*, and because he has failed to demonstrate that he was denied access to favorable evidence which was material to guilt or punishment, he has failed to show prejudice sufficient to undermine confidence in the outcome of his trial. *See United States v. Bagley*, 473 U.S. 667, 678, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481 (1985). This assignment is meritless.

### II.

### ISSUES RELATING TO JURY SELECTION

#### A.

In his first assignment of error, appellant urges that prospective juror Atteberry was improperly excused for cause under *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). In *Walker v. State*, 723 P.2d 273, 281 (Okl.Cr.1986),

---

**2.** Effective July 8, 1985, trial courts were given discretion to appoint expert witnesses in capital cases for indigent criminal defendants who file an application demonstrating that an expert witness is necessary to the preparation of their

defense. *See* 22 O.S.Supp.1985, § 464. *See generally* Note, *Criminal Procedure: The Constitutional Extent of the Adequate Tools of a Defense,* 39 Okla.L.Rev. 273–86 (1986).

*cert. denied,* — U.S. —, 107 S.Ct. 599, 93 L.Ed.2d 600 (1986), this Court held that the standard of *Witherspoon* was superceded by the current *Wainwright v. Witt* test of whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath. *See Wainwright v. Witt,* 469 U.S. at 423–24, 105 S.Ct. at 852.

In applying the foregoing standard to this case, we note that the following exchange took place during **voir dire** between juror Atteberry and the trial judge:

BY THE COURT: ... [I]f you find beyond a reasonable doubt, the Defendant guilty as charged, then you have the ultimate decision then of sentencing. And it's important and critical that if you have any feelings about the case as you look down the line toward what ultimately may be those decisions that you have to reach, if those are going to influence you, then you need to share it with us right now and we can take you off and get someone who won't be faced with that pressure. So, you think about that, but if you feel like it might influence you in any way, just indicate, okay?

BY MRS. ATTEBERRY: The only pressure that I feel in this case is in the sentencing of possibly death, if he would be found guilty, or life imprisonment.

BY THE COURT: Well ... I just read to you that one instruction ... or the one standard, and that is notwithstanding what you feel about the death penalty, can you set aside that feeling and base a decision simply on the facts and what the law is concerning the death penalty?

BY MRS. ATTEBERRY: I really don't feel I could be comfortable doing that.

BY THE COURT: All right; then, you may step down, ma'am.

(Tr. 24–25) Defense counsel's timely objection was overruled.

■ Under the new standard announced in *Witt,* a juror's bias need not be proved with "unmistakable clarity". *Wainwright v. Witt,* 469 U.S. at 425, 105 S.Ct. at 852. *See Walker v. State,* 723 P.2d 273, 281 (Okl.Cr.1986); *Banks v. State,* 701 P.2d

418, 423 (Okl.Cr.1985). As pointed out by the United States Supreme Court, despite this lack of unmistakable clarity in the printed record:

[T]here will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law ... this is why deference must be paid to the trial judge who sees and hears the juror.

*Wainwright, supra,* at 425–26, 105 S.Ct. at 853. In light of juror Atteberry's response, and the "deference" this Court must give to the trial judge "who sees and hears the juror," we believe that the juror was properly excused for cause under *Witt.* Compare *VanWoundenberg v. State,* 720 P.2d 328, 332 (Okl.Cr.1986), *cert. denied,* — U.S. —, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986); *Banks v. State,* 701 P.2d 418, 422–23 (Okl.Cr.1985). This assignment of error is without merit.

### B.

■ In his fifteenth assignment of error, appellant contends that the jury did not represent a fair and impartial cross-section of the community because potential jurors were excluded solely because they were opposed to capital punishment. We have adopted the United States Supreme Court's decision in *Lockhart v. McCree,* 476 U.S. 162, —, 106 S.Ct. 1758, 1770, 90 L.Ed.2d 137 (1986), which rejected such a position. *See VanWoundenberg v. State, supra,* at 331–32. This assignment of error is wholly without merit.

### III.

### ISSUES RELATING TO GUILT–INNOCENCE

### A.

In his second assignment of error, appellant contends that the trial court improperly admitted the preliminary hearing transcript of the medical examiner's testimony because "there was no showing of due diligence by the State." We agree. In *Barber v. Page,* 390 U.S. 719, 724–25, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968), the

United States Supreme Court held that a witness is not "unavailable" for purposes of the former testimony exception to the confrontation requirement unless the prosecution has made a good-faith effort to obtain his presence at trial. In this case, the witness, Dr. James Dibdin, who had formerly been a Deputy Chief Medical Examiner for the State of Oklahoma, had moved to Maryland. The State had issued a subpoena and attending documents to procure the attendance of Dr. Dibdin before the first trial was scheduled. Dr. Dibdin sought to avoid any trips back to Oklahoma, and the record shows that he could properly be termed a hostile witness. After the trial court accepted a guilty plea from the appellant, and defense counsel stipulated to the use of the preliminary hearing transcript of Dibdin's testimony for purposes of the sentencing hearing, a Maryland court dismissed the subpoena because Dibdin's attendance was no longer necessary.

Subsequently, however, the appellant's motion to withdraw his guilty plea, which was filed on March 1, 1984, was granted on March 2, 1984. (O.R. 327–328) (Tr. 586) Jody Mullins, a witness coordinator for the district attorney's office, testified that a second subpoena was issued about eighteen (18) days before the rescheduled trial, but that it was apparently declared moot by a Maryland court on the ground that a previous subpoena had been dismissed, and that a week was not long enough to get the subpoena served through the court system. A careful review of the transcript of the hearing concerning this matter, shows that the District Attorney issued a second subpoena on March 22, 1984, to compel the attendance of Dr. Dibdin at the trial scheduled for April 9, 1984. The second subpoena was thus issued some twenty (20) days after the prosecutor was aware that the appellant's motion to withdraw his guilty plea had been granted. Ms. Mullins testified that one of the Judges of a circuit court in Maryland informed her that by the time the subpoena was forwarded through the district court, where it was originally sent, to the circuit court, "there was not enough time ... to serve ... that subpoe-

na." (Tr. 581–82) Moreover, the trial judge specifically stated on the record that when he originally told the Maryland judge that Dr. Dibdin's attendance was no longer necessary for the purposes of the first subpoena, he emphatically informed the Maryland judge that Dr. Dibdin "might very well have to come on other dates, and the Judge acknowledged that, and told me that he would relate that to the doctor." (Tr. 586) Accordingly, it affirmatively appears from the record that the sole reason the subpoena was not effective was because the district attorney sent it to the wrong court initially without sufficient time for it to be served. The trial court found that, under these circumstances, the State's actions constituted due diligence.

▮ The State bears the burden of establishing that "the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness." *Ohio v. Roberts*, 448 U.S. 56, 74–75, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597 (1980). Under the foregoing facts, we agree with the appellant that the State did not exercise due diligence in determining the proper Maryland court to serve the second subpoena and in timely issuing it. *See* 12 O.S.1981, § 2804(A)(5). Therefore, we find that the trial court erred in permitting the reading of Dibdin's preliminary hearing testimony at trial. *Compare Newton v. State*, 403 P.2d 913, 915–16 (Okl.Cr. 1965). With regard to the guilt-innocence stage of the trial, however, we find that Dibdin's testimony was cumulative in nature, as the appellant's voluntary confession was admitted to establish that he stabbed the victim to death. *See Underwood v. State*, 659 P.2d 948, 952 (Okl.Cr. 1983). Therefore, we find that the error was not reversible. The effect of this error on the sentencing stage will be addressed in Part V of this opinion.

### B.

In his fourth, fifth, and fourteenth assignments of error respectively, the appellant argues that the trial court erred in failing to instruct on first degree manslaughter, in giving an incomplete instruc-

tion on second degree murder, and in giving an erroneous instruction on the presumption of innocence. Initially, we note that these issues were not properly preserved as defense counsel failed to object, and he did not submit written requested instructions with respect to the specific alleged errors now complained of to the trial court. *See Millwood v. State,* 721 P.2d 1322, 1325–26 (Okl.Cr.1986). Therefore, unless the failure to instruct resulted in a miscarriage of justice or deprived the appellant of a substantial right, no reversible error occurred. *See* 20 O.S. 1981, § 3001.1.

### 1.

■ Instructions on lesser offenses necessarily included in the charged crime need only be given when there is evidence that tends to prove the lesser crime. *Walker v. State, supra,* at 283. In the instant case, we do not believe that the record supports a first degree manslaughter instruction, as that crime is defined in 21 O.S. 1981, § 711. We cannot say that the appellant was deprived of a substantial right or that the failure to instruct on first degree manslaughter resulted in a miscarriage of justice. *See* 20 O.S. 1981, § 3001.1. Accordingly, this proposition is without merit.

### 2.

■ With regard to the second degree murder instruction given by the trial court, appellant complains that the instructions given were so incomplete as to constitute fundamental error. We disagree. The trial court used OUJI–CR 450 and the first definition of depraved mind set forth in OUJI–CR 451. These instructions adequately covered the subject. On this record, we fail to see how the failure of the trial court to use the alternative definition of depraved mind resulted in a miscarriage of justice or deprived the appellant of a substantial right. *See* 20 O.S. 1981, § 3001.1.

### 3.

■ Appellant claims error with regard to an instruction given by the trial court which stated that the presumption of innocence continues "unless after consideration

of all doubt." When the instruction is examined in its entirety, however, it clearly and adequately informed the jury that the defendant was presumed innocent, and could be found guilty only after the State proved each element of the offense charged beyond a reasonable doubt. Therefore, we find that no fundamental error occurred because of the obvious typographical error, and the appellant was not deprived of a substantial right. *See Millwood v. State,* 721 P.2d 1322, 1325–26 (Okl.Cr.1986); 20 O.S. 1981, § 3001.1.

### C.

■ Appellant complains in his seventh assignment of error that two comments made by the prosecutor during first stage closing argument deprived him of a fair trial. We shall address only the first comment, since the record reveals that the appellant failed to object to the second comment and we do not find it to be fundamental error. *See Rogers v. State,* 721 P.2d 820, 825 (Okl.Cr.1986). Appellant claims that the prosecutor committed reversible error by appealing to the jury's sympathy for the victim when he asked: "Did Rhonda Kay Pappan [the victim] have any constitutional guarantees?". While we do not condone comments encouraging the jury to allow sympathy to influence its decision by considering the rights of the victim, *see Scott v. State,* 649 P.2d 560, 564 (Okl.Cr. 1982), in light of the strong evidence of guilt, we cannot say that this single isolated comment warrants reversal or modification. *See Grant v. State,* 703 P.2d 943, 946 (Okl.Cr.1985); *Brodbent v. State,* 700 P.2d 1021, 1022–23 (Okl.Cr.1985); *Cooks v. State,* 699 P.2d 653, 660 (Okl.Cr.1985), *cert. denied,* 474 U.S. 935, 106 S.Ct. 268, 88 L.Ed.2d 275 (1985). Therefore, this assignment of error is without merit.

### D.

■ In his eighth assignment of error, appellant asserts that the trial court erred in admitting State's Exhibit No. 4, an 8″ x 10″ color photograph which depicted the victim lying down in a pool of blood at the crime scene. The exhibit accurately depict-

ed the position of the body and the crime scene. It was not unduly gruesome, and it was useful in establishing the corpus delicti. *Holloway v. State*, 602 P.2d 218, 220 (Okl.Cr.1979). We cannot say that the trial court abused its discretion in admitting the exhibit. *See Nuckols v. State*, 690 P.2d 463, 470 (Okl.Cr.1984), *cert. denied*, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985). *See also* 12 O.S. 1981, § 2403.

### E.

Appellant contends in his twelfth assignment of error that the trial court improperly restricted cross-examination of OSBI Agent David Page by sustaining the State's objection when defense counsel asked if Page had any knowledge as to whether appellant intended to harm the victim. The record shows that defense counsel elicited an affirmative response from Agent Page as to whether the appellant had claimed that he had not intended to "murder" the victim. Shortly thereafter, the prosecutor's objection was sustained when defense counsel asked the following question:

Do you have any knowledge ... that Mr.'  Castro had a **premeditated design** to do harm to Mrs. Pappan?

▆▆▆ The general rule is that any matter is a proper subject of cross-examination which is responsive to testimony given on direct examination or which is material or relevant thereto and which tends to elucidate, modify, explain, contradict or rebut testimony given in chief by the witness. *Smith v. State*, 695 P.2d 864, 868 (Okl.Cr. 1985). In the exercise of sound discretion, however, the trial court may limit the extent of cross-examination and its ruling will be reversed only upon a clear abuse of discretion which resulted in manifest prejudice to the accused. *Hall v. State*, 698 P.2d 33, 36 (Okl.Cr.1985). In the present case, we must agree with the State that whether the appellant had a "premeditated design" to harm the victim was irrelevant, since he was charged with felony-murder. Actual malice or premeditated intent to kill is irrelevant when a first degree murder conviction is sought under the felony-mur-

der doctrine. *See Wade v. State*, 581 P.2d 914, 916 (Okl.Cr.1978). In light of the foregoing, we cannot say that the trial court's ruling constituted a clear abuse of discretion. Moreover, the appellant has failed to demonstrate resulting prejudice. *Hall, supra.* Accordingly, this assignment of error is without merit.

### F.

In his thirteenth assignment of error, appellant asserts that his confession was involuntary and should have been suppressed. The appellant's confession was admitted after the trial court held an **in camera** hearing and found it to be voluntary. Appellant was advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), prior to making any statements, and he signed a form acknowledging that he understood those rights. Appellant argues that his confession was involuntary because he was taken to the police station where he was locked in a small room with two police officers, that one of the officers slammed his fist on the table and told the appellant to confess, and that appellant was tearful during the interview.

▆▆▆ The ultimate test of the voluntariness of a confession is whether it is the product of an essentially free and unconstrained choice by its maker. We must look to the totality of the surrounding circumstances, including the characteristics of the accused and the details of the interrogation. *Young v. State*, 670 P.2d 591, 594 (Okl.Cr.1983). In the present case, the record supports a finding that the confession was not extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. *See Malloy v. Hogan*, 378 U.S. 1, 7, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964). Mere advice or exhortation by the police that it would be better for the accused to tell the truth, unaccompanied by either a threat or a promise, does not render a subsequent confession involuntary. *See James v. State*, 711 P.2d 111, 113 (Okl.Cr. 1985); *Young, supra*, at 595. On this

record, we conclude that the State met its burden of proving that the confession was voluntarily given. *See Huddleston v. State*, 695 P.2d 8, 9–10 (Okl.Cr.1985). This assignment of error is without merit.

### G.

We now address the assignments of error raised by the appellant in his supplemental brief.

### 1.

■■■ Appellant first claims that his confession should be suppressed because it was the result of an alleged conflict of interest, and that an evidentiary hearing is necessary to determine whether a conflict of interest in fact existed. The purported conflict occurred when appellant's attorney, Ken Holmes, allegedly represented Steven Gregory during the period of time when Gregory "informed" against the appellant concerning the murder of Beulah Cox. Although the assistant district attorney who was initially in charge of Gregory's case testified that Mr. Holmes had at some time represented Gregory, the record reflects that Tom Rigdon was court-appointed to represent Gregory in May, 1983, and continued in that capacity until January 10, 1984, when judgment and sentence was finalized. Appellant has wholly failed to substantiate the existence of a conflict of interest. The record rebuts appellant's claim insofar as it shows that on August 10, 1983, when Mr. Gregory told authorities about a map drawn by appellant which revealed the location of the body of Beulah Cox, Gregory was being represented by Tom Rigdon. The only evidence even suggesting a possible conflict of interest was appellant's hearsay testimony that he was told that Holmes was Gregory's attorney, and that appellant observed Holmes "at the door when they called Gregory out" of his cell.

The record does not reflect, and appellant does not claim in his supplemental brief, that a timely objection was made at trial on the basis of a conflict of interest. Thus, in order to establish a Sixth Amendment violation, appellant is required to demonstrate that an actual conflict of interest adversely affected his lawyer's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980). In the instant case, appellant has shown no more than a mere possibility of conflict, which is insufficient to invalidate a criminal conviction. *Id.* In addition, there is no evidence that defense counsel's performance was adversely affected by the alleged conflict. On this record, we do not believe that an evidentiary hearing is necessary. Accordingly, this claim is without merit.

### 2.

■■■ Appellant next claims that his confessions were inadmissible because they were the fruit of an illegal arrest. We note initially that appellant did not attack the legality of his arrest in his brief in chief, but raises it for the first time in his supplemental brief. Supplemental briefs are intended to be limited to supplementation of recent authority bearing on the issues raised in the brief in chief, or on issues specifically directed to be briefed as ordered by this Court. Therefore, we do not believe that this issue is properly before this Court. Even so, the record strongly supports the conclusion that appellant was not placed under arrest until after he had voluntarily accompanied officers to the police station, been advised of his *Miranda* rights and had freely and voluntarily confessed to killing Pappan in the commission of armed robbery. We recognize that an accused is entitled to the full protection of the fourth and fourteenth amendments when the police, without probable cause or judicial authorization, **forcibly** remove a person from his home or other place in which he is entitled to be, and transport him to the police station where he is briefly detained for investigative purposes. *Hayes v. Florida*, 470 U.S. 811, 815–16, 105 S.Ct. 1643, 1647, 84 L.Ed.2d 705 (1985) (emphasis added). Such seizures are sufficiently like arrests to require probable cause. *Id.* *Hayes* is distinguishable, however, because here the record shows that appellant voluntarily accompanied the officers to the police

station. *See State v. Hoffpauir*, 44 Wash. App. 195, 722 P.2d 113, 115–16 (1986). The testimony of Agent Page indicated that the appellant was free to return home, up until he confessed to the crime. Appellant's testimony indicated that he believed he had a choice on whether or not he should accompany the officers to the station. The instant case is thus distinguishable from *Dunaway v. New York*, 442 U.S. 200, 207, 99 S.Ct. 2248, 2253, 60 L.Ed.2d 824 (1979), where the defendant was "involuntarily" taken to the police station. Accordingly, we must reject appellant's contention that his confession was the result of an illegal arrest. Having previously found the confession to be voluntary in Part III(F), this assignment of error is without merit.

### 3.

■ Appellant next complains, that the trial court erred in admitting evidence gained through an illegal search. In his brief, however, appellant concedes that his wife gave permission to the officers to enter their home. In addition, appellant signed a consent to search form acknowledging that he understood that he had a right to refuse to consent to a search made without a warrant. The record supports a finding that the consent was freely and voluntarily given. *See Sullivan v. State*, 716 P.2d 684, 686–87 (Okl.Cr.1986). This assignment of error is without merit.

### 4.

■ Finally, appellant urges that his conviction and punishment for both robbery with firearms and first degree felony-murder, with the robbery serving as the underlying felony, violated the double jeopardy clause of the fifth amendment. In *Jefferson v. State*, 675 P.2d 443, 447 (Okl. Cr.1984), this Court vacated a twenty (20) year sentence for Robbery With a Dangerous Weapon, where it served as the predicate for a felony-murder conviction which was affirmed. *See also Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977); *Harris v. Oklahoma*, 433 U.S. 682, 683, 97 S.Ct. 2912, 2913, 53 L.Ed.2d 1054 (1977). Accordingly, the judgment and sentence for Robbery With Firearms must be vacated and remanded to the district court with instructions to dismiss.

### IV.

### ISSUES RELATING TO PUNISHMENT

#### A.

In his sixth assignment of error, appellant claims that the prosecutor violated the notice requirement of 21 O.S. 1981, § 701.10, when he exposed the jury to two allegations of violent acts which were not included in the Bill of Particulars. During the second stage of the trial, the prosecutor in his opening statement said that there would be testimony that after the appellant was recaptured following his escape from the Kay County jail, he "repeatedly threatened the jailer with death if the Defendant ever got the opportunity to get out of jail once again." The prosecutor also stated that the evidence surrounding the death of Beulah Cox would show that with regard to her appearance, her blue jeans, pantyhose, and panties were pulled down near her knees.

■ With regard to the alleged death threats to the jailer, we note that following the opening statement defense counsel's objection on this ground was sustained. Moreover, the trial judge specifically admonished the jury to disregard the prosecutor's statements with regard to such threats. We believe that this was sufficient on this record to cure any alleged error. *See Horton v. State*, 728 P.2d 1376, 1377 (Okl.Cr.1986); *Walker v. State*, 723 P.2d at 286. In addition, the State was prohibited from eliciting testimony regarding such threats, and the appellant has failed to demonstrate sufficient prejudice to require reversal or modification. *Walker, supra*. *See also* 20 O.S. 1981, § 3001.1.

■ With regard to appellant's assertion that the prosecutor improperly implied that appellant sexually molested Beulah Cox by referring to the condition of her clothing, we note that the State's pretrial notice contained an allegation of the Cox

homicide, although it did not specifically mention the condition of her clothing. Appellant could have suffered no prejudice, however, as the appellant's confession on the stand during the second stage clearly revealed that he had actual notice of the Cox homicide and the circumstances surrounding it. We believe that the pretrial notice given to the appellant was adequate to allow him to prepare his defense on this issue. *See Ross v. State,* 717 P.2d 117, 123 (Okl.Cr.1986); *Liles v. State,* 702 P.2d 1025, 1030 (Okl.Cr.1985), *cert. denied,* — U.S. —, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1986). In addition, defense counsel cleared up any ambiguities on cross-examination when he elicited testimony which revealed that the police investigation of the Cox homicide did not reveal any evidence of sexual contact. *See Newsted v. State,* 720 P.2d 734, 740 (Okl.Cr.1986), *cert. denied,* — U.S. —, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986). For all of the foregoing reasons, this assignment of error is without merit.

### B.

In his seventh assignment of error, appellant asserts that during second stage closing argument the prosecutor improperly characterized him as a "woman killer who attacks his victims from behind." Initially, we note that this comment was not properly preserved for review because counsel failed to make a timely specific objection. *See VanWoundenberg v. State,* 720 P.2d 328, 334 (Okl.Cr.1986), *cert. denied,* — U.S. —, 107 S.Ct. 447, 93 L.Ed. 2d 395 (1986). Furthermore, the appellant took the stand during the second stage and confessed to killing two women. One of the women was shot in the back of the head, and the other was stabbed several times in the back. Appellant admitted approaching one of the victims from behind. Although we will not condone derogatory name calling and unfair characterizations of the accused, *see Tobler v. State,* 688 P.2d 350, 354 (Okl.Cr.1984), and even though the comment here was unnecessary, it was supported by the evidence and does not supply a ground for reversal or modification. *See Grant v. State,* 703 P.2d 943, 946 (Okl.Cr.1985). *Compare Thomp-*

*son v. State,* 724 P.2d 780, 784 (Okl.Cr. 1986), *cert. granted,* — U.S. —, 107 S.Ct. 1284, 94 L.Ed.2d 143 (1987) (prosecutor's characterization of a sixteen-year-old murder defendant as being emotionally older than his chronological age was a reasonable inference from the evidence).

### C.

Appellant contends in his ninth assignment of error that the trial court erred in refusing to admit the presentence investigation report into evidence, and that he was prejudiced because the mitigating evidence contained in the report was excluded from consideration by the jury. He contends that the hearsay contained in the report was admissible either because the rules of evidence do not apply to sentencing proceedings, 12 O.S. 1981, § 2103(B)(2), including the punishment stage of capital cases, or because it fell within the public agency report exception to the hearsay rule, 12 O.S. 1981, § 2803(8).

Although Section 2103(B)(2) of the Oklahoma Evidence Code states that the rules of evidence, except those that relate to privileges, do not apply to sentencing proceedings, this Court has previously rejected the assertion that it is improper for a trial court to limit the presentation of mitigating circumstances to those presented in compliance with the rules of evidence. *See Chaney v. State,* 612 P.2d 269, 279 (Okl.Cr. 1980), *modified on other grounds sub nom. Chaney v. Brown,* 730 F.2d 1334 (10th Cir.1984), *cert. denied,* 469 U.S. 1090, 105 S.Ct. 601, 83 L.Ed.2d 710 (1984), *aff'd as modified,* 699 P.2d 159 (Okl.Cr.1985). In *Chaney,* we recognized that a capital sentencing proceeding is more like a separate trial in that it involves new findings of fact. Subsequent decisions have either directly or impliedly held that the rules of evidence must be followed in the second stage of a capital case. *See, e.g., Van-Woundenberg v. State,* 720 P.2d 328, 337 (Okl.Cr.1986), *cert. denied,* — U.S. —, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986); *State v. Chatman,* 671 P.2d 56, 57 (Okl.Cr.1983). Moreover, as we noted in *Wade v. State,* 624 P.2d 86, 91 (Okl.Cr.1981), the rationale

for exempting sentencing proceedings from the rules of evidence is to provide the widest range of relevant information to guide the **judge** in imposing sentence. Second stage **jury** sentencing proceedings involving new findings of fact are not within the reason for the rule. *Id.*

▮ So long as the rules of evidence are not mechanistically applied to exclude relevant and reliable evidence from the punishment phase of a capital trial, *see Green v. Georgia,* 442 U.S. 95, 97, 99 S.Ct. 2150, 2151, 60 L.Ed.2d 738 (1979), we believe that the heightened reliability required by due process in capital sentencing proceedings supports the application of the rules of evidence during the punishment phase. We believe that our holding achieves a proper balance between the requirement that evidence introduced at the sentencing stage, although broad in scope, must not unduly prejudice a defendant, *see Zant v. Stephens,* 462 U.S. 862, 886, 103 S.Ct. 2733, 2747–48, 77 L.Ed.2d 235 (1983), quoting *Gregg v. Georgia,* 428 U.S. 153, 203–04, 96 S.Ct. 2909, 2939, 49 L.Ed.2d 859 (1976), and the requirement that the sentencer may not refuse to consider or be precluded from considering any relevant mitigating evidence. *See Skipper v. South Carolina,* 476 U.S. 1, ——, 106 S.Ct. 1669, 1671, 90 L.Ed.2d 1 (1986). There is no constitutional mandate requiring states to abandon their rules of evidence in a capital sentencing proceeding. *See Thompson v. Wainwright,* 787 F.2d 1447, 1457–58 (11th Cir.1986).

▮ Appellant has failed to cite any specific mitigating evidence which was contained in the presentence investigation report that was not brought to the attention of the jury through testimony elicited during both phases of the trial. Based on the foregoing, assuming **arguendo,** without actually deciding, that the hearsay in the report was admissible under 12 O.S. 1981, § 2803(8), or some other exception, we must conclude that the trial court did not act improperly in light of the cumulative nature of the proffered evidence. *See* 12 O.S. 1981, § 2403. Finally, absent the unique circumstances present in this case

where the appellant pled guilty, the prosecutor agreed to a presentence investigation report on the underlying felony, and the appellant was allowed to withdraw his guilty plea, it is clear that the appellant would not have been entitled to a presentence investigation report under 22 O.S. Supp.1982, § 982. We have recognized that such reports contain information that would not be permitted to go to a jury, and that the sole purpose of such reports is to assist the judge, not the jury, in non-capital sentencing. *See Borden v. State,* 710 P.2d 116, 118 (Okl.Cr.1985). Accordingly, this assignment of error is without merit.

### D.

▮ In his tenth assignment of error, appellant maintains that the Oklahoma death penalty statute, and the heinous, atrocious or cruel and continuing threat aggravating circumstances, are unconstitutionally overbroad as applied. Recently, in *Cartwright v. Maynard,* 822 F.2d 1477, 1478 (10th Cir.1987), the Tenth Circuit held that this Court's construction of the "especially heinous, atrocious, or cruel" aggravating circumstance was "unconstitutionally vague." Subsequently, this Court held that henceforth this aggravating circumstance will be construed to require torture or serious physical abuse. *Stouffer v. State,* 742 P.2d 562, 563 (Okl.Cr.1987) (opinion on rehearing). On the basis of *Stouffer,* this aggravating circumstance is not now being applied in an unconstitutionally vague or overbroad manner. We have rejected arguments that the continuing threat aggravating circumstance is being evaluated in an arbitrary manner or that it is vague. *See VanWoundenberg v. State,* 720 P.2d at 336. Finally, we have held that the Oklahoma death penalty statutes are constitutional. *See Jones v. State,* 660 P.2d 634, 643 (Okl.Cr.1983). This assignment is without merit.

### E.

▮ Appellant complains in his eleventh assignment of error that the trial court erred in giving Instruction No. 29, which defined the term probability of future acts

of violence which would constitute a continuing threat to society. Our examination of the record, however, reveals that defense counsel did not object to the giving of the instruction, but rather he wanted it to include the appellant's conduct at trial and the appropriateness of psychological studies. Insofar as the instruction stated that the jury could consider "any other reasonable basis in the evidence which may help you determine probability," and neither side presented any psychological evidence, we cannot say that the failure of the trial judge to make the requested additions deprived the appellant of a substantial right. *See* 20 O.S. 1981, § 3001.1. Accordingly, this assignment of error is without merit.

## V.

## MANDATORY SENTENCE REVIEW

### A.

Finally, pursuant to 21 O.S.Supp.1985, § 701.13(C), we are called upon to determine two issues in all capital cases:

1. Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; and

2. Whether the evidence supports the jury's finding of a statutory aggravating circumstance as enumerated in Section 701.12 of this title.

### 1.

First, from our review of the record, we cannot say that the jury was influenced by passion, prejudice, or any other arbitrary factor contrary to Section 701.13(C)(1).

### 2.

Second, the jury specifically found that the murder was especially heinous, atrocious or cruel, and that there existed a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. *See* 21 O.S. 1981, § 701.12(4) & (7). In Part III(A) of this opinion, we held that the trial court erred in permitting the reading of Dr. Dibdin's testimony at preliminary hearing concerning the victim's cause of death and the nature and extent of her injuries. Appellant urges that prejudice occurred because the State did not limit the preliminary hearing testimony of Dr. Dibdin to the cause of the victim's death, but used it to support the heinous, atrocious, or cruel aggravating circumstance. During the sentencing stage, the prosecutor argued that the "heinous, atrocious, or cruel" aggravating circumstance was supported by the medical examiner's testimony that "it was excruciating pain; **it was a very slow and painful death.**" (emphasis added) At the beginning of the second stage, the State adopted the evidence presented during the first stage, which would have included the testimony of the medical examiner, Dr. Dibdin. Although the medical examiner's testimony stated that the three stab wounds which penetrated the victim's lungs would have caused a tremendous degree of shock and pain, he did not testify that the victim suffered a "slow and painful death" as argued by the prosecutor. We note that no timely specific objection was made to the argument by the prosecutor. The jury had been properly instructed by the trial court that the arguments made by the attorneys were not evidence.

For the same reasons given in Part III(A), the medical examiner's testimony cannot be used to support the heinous, atrocious, or cruel aggravating circumstance. After excluding the medical examiner's testimony, we find that there is insufficient independent evidence to support the heinous, atrocious, or cruel aggravating circumstance. 21 O.S. 1981, § 701.12(4). As this Court recognized in *Stouffer v. State*, 742 P.2d 562, 564 (Okl. Cr.1987) (opinion on rehearing), however, the rejection of one aggravating circumstance does not necessarily invalidate the death sentence where the jury has properly found another aggravating circumstance. *Id.* at 564.

In this case, the jury also found the existence of the continuing threat aggravating circumstance. In addition to the evidence presented by the State, appellant himself testified during the sentencing

stage that he had previously killed Beulah Cox in Stillwater, that he had committed two prior armed robberies in Ponca City, and that he had killed Rhonda Pappan in Ponca City. We believe that there was sufficient evidence to support the jury's finding of the existence of a probability that the appellant would commit criminal acts of violence that would constitute a continuing threat to society. Upon careful consideration of the evidence supporting the continuing threat aggravating circumstance, and the evidence offered in mitigation, we find the sentence of death factually substantiated and valid under 21 O.S. Supp.1986, § 701.13(F). Due to the strong evidence of guilt and of the continuing threat aggravating circumstance, we cannot say that the death sentence is arbitrary or capricious after the invalid aggravating circumstance is removed and the aggravating and mitigating circumstances are reweighed. *See Stouffer, supra,* at 564. *See also Barclay v. Florida,* 463 U.S. 939,

103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983); *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983).

### B.

In accordance with my view that the application of 21 O.S.Supp.1985, § 701.13(C), which became effective July 16, 1985, to cases pending on appeal at the time the statute was passed renders the enactment an **ex post facto** law, I find it necessary to conduct the proportionality review which was formerly required under 21 O.S.1981, § 701.13(C). Although a majority of this Court now holds that such a proportionality review is unnecessary, *see Foster v. State,* 714 P.2d 1031, 1041 (Okl. Cr.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 249, 93 L.Ed.2d 173 (1986), I have compared the sentence imposed herein to previous cases which this Court has either affirmed[3] or modified[4] and find the sentence to be proper.

3. *Hayes v. State,* 738 P.2d 533 (Okl.Cr.1987); *Smith v. State,* 736 P.2d 531 (Okl.Cr.1987); *Stouffer v. State,* 738 P.2d 1349 (Okl.Cr.1987), *aff'd on rehearing,* 742 P.2d 562 (Okl.Cr.1987); *James v. State,* 731 P.2d 1384 (Okl.Cr.1987); *Moore v. State,* 736 P.2d 161 (Okl.Cr.1987); *Brecheen v. State,* 732 P.2d 889 (Okl.Cr.1987); *Johnson v. State,* 731 P.2d 993 (Okl.Cr.1987); *Smith v. State,* 727 P.2d 1366 (Okl.Cr.1986); *Thompson v. State,* 724 P.2d 780 (Okl.Cr.1986), *cert. granted,* —— U.S. ——, 107 S.Ct. 1284, 94 L.Ed.2d 143 (1987); *Walker v. State,* 723 P.2d 273 (Okl.Cr. 1986); *VanWoundenberg v. State,* 720 P.2d 328 (Okl.Cr.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986); *Newsted v. State,* 720 P.2d 734 (Okl.Cr.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986); *Brewer v. State,* 718 P.2d 354 (Okl.Cr. 1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 245, 93 L.Ed.2d 169 (1986); *Ross v. State,* 717 P.2d 117 (Okl.Cr.1986); *Bowen v. State,* 715 P.2d 1093 (Okl.Cr.1985), *vacated sub nom. Bowen v. Maynard,* 799 F.2d 593 (10th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 458, 93 L.Ed.2d 404 (1986); *Foster v. State,* 714 P.2d 1031 (Okl. Cr.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 249, 93 L.Ed.2d 173 (1986); *Green v. State,* 713 P.2d 1032 (Okl.Cr.1985), *cert. denied,* —— U.S. ——, 107 S.Ct. 241, 93 L.Ed.2d 165 (1986); *Liles v. State,* 702 P.2d 1025 (Okl.Cr.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1985); *Banks v. State,* 701 P.2d 418 (Okl.Cr. 1985); *Cooks v. State,* 699 P.2d 653 (Okl.Cr. 1985), *cert. denied,* 474 U.S. 935, 106 S.Ct. 268, 88 L.Ed.2d 275 (1985); *Cartwright v. State,* 695 P.2d 548 (Okl.Cr.1985), *cert. denied,* 473 U.S.

911, 105 S.Ct. 3538, 87 L.Ed.2d 661 (1985), *aff'd,* 708 P.2d 592 (Okl.Cr.1985), *cert. denied,* 474 U.S. 1073, 106 S.Ct. 837, 88 L.Ed.2d 808 (1986); *Brogie v. State,* 695 P.2d 538 (Okl.Cr.1985); *Stout v. State,* 693 P.2d 617 (Okl.Cr.1984), *cert. denied,* 472 U.S. 1022, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985); *Nuckols v. State,* 690 P.2d 463 (Okl.Cr. 1984), *cert. denied,* 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985); *Robison v. State,* 677 P.2d 1080 (Okl.Cr.1984), *cert. denied,* 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984); *Dutton v. State,* 674 P.2d 1134 (Okl.Cr.1984), *cert. denied,* 467 U.S. 1256, 104 S.Ct. 3548, 82 L.Ed.2d 850 (1984), *modified,* 812 F.2d 593 (10th Cir.1987); *Stafford v. State,* 669 P.2d 285 (Okl. Cr.1983), *vacated,* 467 U.S. 1212, 104 S.Ct. 2652, 81 L.Ed.2d 359 (1984), *aff'd on remand,* 697 P.2d 165 (Okl.Cr.1985), *cert. denied,* 474 U.S. 865, 106 S.Ct. 188, 88 L.Ed.2d 157 (1985); *Coleman v. State,* 668 P.2d 1126 (Okl.Cr.1983), *cert. denied,* 464 U.S. 1073, 104 S.Ct. 986, 79 L.Ed.2d 222 (1984), *aff'd,* 693 P.2d 4 (Okl.Cr.1984); *Stafford v. State,* 665 P.2d 1205 (Okl.Cr.1983), *vacated,* 467 U.S. 1212, 104 S.Ct. 2651, 81 L.Ed.2d 359 (1984), *aff'd on remand,* 700 P.2d 223 (Okl.Cr. 1985), *cert. denied,* 474 U.S. 865, 106 S.Ct. 188, 88 L.Ed.2d 157 (1985); *Davis v. State,* 665 P.2d 1186 (Okl.Cr.1983), *cert. denied,* 464 U.S. 865, 104 S.Ct. 203, 78 L.Ed.2d 177 (1983); *Ake v. State,* 663 P.2d 1 (Okl.Cr.1983), *rev'd,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); *Parks v. State,* 651 P.2d 686 (Okl.Cr.1982), *cert. denied,* 459 U.S. 1155, 103 S.Ct. 800, 74 L.Ed.2d 1003 (1983); *Jones v. State,* 648 P.2d 1251 (Okl.Cr. 1982), *cert. denied,* 459 U.S. 1155, 103 S.Ct. 799, 74 L.Ed.2d 1002 (1983), *aff'd,* 704 P.2d 1138

Therefore, finding no error warranting reversal or modification, the judgment and sentence with regard to First Degree Felony-Murder is AFFIRMED, while as previously discussed, the judgment and sentence for Robbery With Firearms is VACATED and REMANDED with instructions to DISMISS.

BRETT, P.J., concurs.

BUSSEY, J., concurs in result.

(Okl.Cr.1985); *Hays v. State*, 617 P.2d 223 (Okl. Cr.1980); *Chaney v. State*, 612 P.2d 269 (Okl.Cr. 1980), *modified on other grounds sub nom. Chaney v. Brown*, 730 F.2d 1334 (10th Cir.1984), *cert. denied*, 469 U.S. 1090, 105 S.Ct. 601, 83 L.Ed.2d 710 (1984), *aff'd as modified*, 699 P.2d 159 (Okl.Cr.1985).

**4.** *Parker v. State*, 713 P.2d 1032 (Okl.Cr.1985); *Kelly v. State*, 692 P.2d 563 (Okl.Cr.1984); *Eddings v. State*, 616 P.2d 1159 (Okl.Cr.1980), *modified*, 688 P.2d 342 (Okl.Cr.1984), *cert. denied*, 470 U.S. 1051, 105 S.Ct. 1750, 84 L.Ed.2d 814 (1985); *Morgan v. State*, No. F-79-487 (Okl.Cr.

Nov. 14, 1983) (Unpublished); *Johnson v. State*, 665 P.2d 815 (Okl.Cr.1982); *Glidewell v. State*, 663 P.2d 738 (Okl.Cr.1983); *Jones v. State*, 660 P.2d 634 (Okl.Cr.1983); *Driskell v. State*, 659 P.2d 343 (Okl.Cr.1983); *Boutwell v. State*, 659 P.2d 322 (Okl.Cr.1983); *Munn v. State*, 658 P.2d 482 (Okl.Cr.1983); *Odum v. State*, 651 P.2d 703 (Okl.Cr.1982); *Burrows v. State*, 640 P.2d 533 (Okl.Cr.1982), *cert. denied*, 460 U.S. 1011, 103 S.Ct. 1250, 75 L.Ed.2d 480 (1983); *Franks v. State*, 636 P.2d 361 (Okl.Cr.1981), *cert. denied*, 455 U.S. 1026, 102 S.Ct. 1729, 72 L.Ed.2d 147 (1982); *Irvin v. State*, 617 P.2d 588 (Okl.Cr. 1980).