Harold Leonard RATHBUN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–17565.

Court of Criminal Appeals of Oklahoma.

Jan. 17, 1973.

Rehearing Denied March 5, 1973.

———◆———

Josh J. Evans, Beaver, for appellant.

Larry Derryberry, Atty. Gen., Nathan J. Gigger, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Harold Leonard Rathbun, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Beaver County for the offense of Embezzlement. His punishment was fixed at five (5) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Kenneth Allen testified that he was employed as the General Manager of Perryton Equity Exchange. The defendant was employed by the exchange as the manager of the Turpin Elevator. He testified that prior to March 12, 1971, the defendant was advised by telephone to not allow any grain to be taken out of the Turpin Elevator. At approximately 10:30 p. m. on March 12, he was driving through Turpin when he observed a truck being

loaded at the elevator. He parked his car, turned the lights off and observed the defendant standing by the truck. After the truck was loaded and the persons left, he checked the truck and observed that it was loaded with milo. He returned to his car and decided to attempt to follow the truck when it left. He fell asleep and when he woke up, the truck was gone. He testified that the value of the grain in the truck was "approximately 13 or 14 hundred dollars." He subsequently directed that an audit be made on the Turpin Elevator. On April 19, he and the auditors talked to the defendant about the missing grain. The defendant, at first, denied any knowledge of any "wrongdoing." The defendant then asked to talk privately with him and, when the others left the room, the defendant admitted taking nine loads. The defendant agreed to pay for all of the missing grain. On April 23, Allen had another conversation with the defendant and his attorney and the defendant again admitted taking nine loads.

Leroy Carter testified that he was employed by the Perryton Equity Exchange. On February 3, he called the defendant and directed him to not ship any more grain out of the Turpin Elevator. On March 13, he went to Turpin to pick up the daily report. The defendant stated that he had already mailed the report to the office. Upon receiving the report, it reflected that there was no grain loaded out of the elevator on March 12.

Paul Tucker testified he was employed as the Credit Manager for the Perryton Equity Exchange. He identified the State's Exhibits of the daily reports from the Turpin Elevator. He testified that the reports were submitted under the supervision of the defendant. Subsequently, an "adjustment" was made on the Turpin Elevator and there was a shortage.

The court conducted an evidentiary hearing outside the presence of the jury as to the admissibility of a written statement by the defendant.

Perry J. Town testified he was employed as an agent for the Oklahoma Bureau of Investigation. On April 28, 1971, he was in the Beaver County District Attorney's office when the defendant came to the office. He testified that the Assistant District Attorney advised the defendant of his Miranda rights. He informed the defendant that he was not under arrest and that he had not asked to talk to him. The defendant stated that he volunteered to see him and acknowledged that he understood each of his rights. The defendant wrote a statement out in longhand which was subsequently typed by the District Attorney's secretary.

On cross-examination, he testified that during the conversation with the defendant, he heard "something about deferred sentence." (Tr. 83)

Robert Goetzinger testified that he was the Assistant District Attorney of Beaver County. On April 28, he was called and advised that the defendant wanted to talk to him. The defendant came to his office and he advised the defendant of "his rights." He testified that the defendant did not advise him that he was represented by an attorney prior to signing the statement. On cross-examination, he denied having knowledge that the defendant was represented by counsel on April 28.

The defendant testified that he informed the Assistant District Attorney that he was represented by an attorney prior to signing the statement. He further testified that the Assistant District Attorney promised him that if he would cooperate with them they would recommend a deferred sentence. While at the District Attorney's office he paid certain persons money to settle two other cases. He testified that he did not ask to talk to the District Attorney but rather that Deputy Sparks asked him to have the conversation.

On cross-examination, the defendant testified that he had previously been employed as a police officer and had, on occasion, advised persons of their constitu-

tional rights. He testified that he knew his constitutional rights on April 28, 1971.

Josh Evans testified that he was employed to represent the defendant on April 23, 1971. On April 27, he called Assistant District Attorney Goetzinger and informed him that he represented the defendant. Goetzinger stated that it might be approximately two weeks before charges were filed. The following afternoon, he met Goetzinger as he was going home and Goetzinger informed him that the defendant had been in and what had occurred.

Undersheriff Sparks testified that on April 28, 1971 he had a conversation with the defendant, whereupon the defendant stated that he "would like to get this business straightened out." The defendant asked him if he could arrange a meeting with the Assistant District Attorney. He arranged the meeting and was present during part of the conversation in the District Attorney's office. At that time, Goetzinger introduced himself to the defendant and advised him of "his rights." The defendant did not say anything about being represented by an attorney prior to giving the statement. He testified that the defendant was informed that "no one could promise him anything" although at some time during the conversation there was something said about a deferred sentence.

At the conclusion of the hearing, the trial court ruled that the statement was admissible. The defendant admitted in the written statement that he took nine loads of milo from the elevator without permission or authority.

The defendant did not testify nor was any evidence offered in his behalf.

█ The first two propositions assert that the State failed to prove all the essential elements of the crime of Embezzlement. We are of the opinion that both propositions are without merit. Title 21 O.S., § 1451, defines Embezzlement as follows:

"Embezzlement is the fraudulent appropriation of property by a person to whom it has been entrusted."

The State's evidence adduced that the defendant was employed by the Perryton Equity Exchange and was entrusted with certain personal property of the Exchange stored in the elevator at Turpin. The evidence further reflected that on March 12, 1971, the defendant did fraudulently appropriate one load of milo of the value of more than Twenty-five Dollars ($25.00) without authorization from the exchange. We thus conclude that the State did prove the essential elements of the crime charged.

█ The final proposition contends that the court erred in admitting the written statement of the defendant because "it was not voluntarily given; further it did not include an admission of the crime charged herein and it was illegally obtained; and further it included the admission of other purported crimes which were wholly unrelated and unconnected with the crime charged in the information herein." We observe that the trial court conducted an Evidentiary Hearing outside the presence of the jury in conformance with our holding in Tice v. State, Okl.Cr., 478 P.2d 916, wherein we stated in the Syllabus:

"1. Where the question arises as whether a confession is voluntary or involuntary, the correct procedure is for the court to immediately withdraw the jury and hear all the evidence both for and against the competency of the same, and all the facts and circumstances under which the same was made, and decide whether the confession was voluntary or involuntary. If voluntary, it may be presented, together with all the facts and circumstances surrounding the giving of the same to the jury. If involuntary, it is inadmissible.

"2. The judge's consideration of voluntariness is carried out separate and aside from issues of the reliability of the confession and the guilt or innocence of the accused and without regard to the fact the issue may again be raised before the jury if decided against the defendant. The record will show the judge's conclu-

sions in this regard and his findings upon the underlying facts may be express or *ascertainable from the record.*

"3. Once the confession is properly found to be voluntary by the judge, reconsideration of this issue by the jury does not, of course, improperly affect the jury's determination of the credibility or probativeness of the confession or its ultimate determination of guilt or innocence.

"4. The words of the *Miranda* warning do not constitute a ritualistic formula which must be repeated without variation in order to be effective, but words which convey the substance of the warning along with the required information are sufficient."

At the conclusion of the Evidentiary Hearing, the trial court stated:

"The evidence is conflicting. There is no way I can resolve it. I have to flip the coin. I thought perhaps the only real disinterested party was Mr. Sparks and that he might shed some light on it. His testimony is so ambiguous I can't tell when he knew. He said one time he knew on the way home. I think it is improper and shouldn't be used when law officers know a man is charged with a serious matter to bring him into the district attorneys [sic] office, whether he is under arrest or not, with a whole group of law officers talking to him. He is at a disadvantage. If he already has an attorney I can't imagine you—if you had an attorney, a former police officer, I don't imagine you being that stupid, then going ahead and carrying on a conversation when you knew you didn't have to. But the evidence is clear. This man was warned of his rights. The evidence is clear that he knew what his rights were. I am not going to extend the Miranda warning. It has been extended far enough. The statement will be received in evidence. * * *" (Tr. 139–140)

The issue of voluntariness was thereupon submitted to the jury who apparently chose to believe that the statement was, in fact, voluntarily made.

We next observe that evidence of other similar offenses was admissible as tending to show a common scheme and plan. In Fields v. State, Okl.Cr., 364 P.2d 723, we stated:

"Turning to the second proposition of error relating to the admission and exclusion of evidence and other rulings of the trial court we must observe initially that if counsel bases error upon alleged mistakes or errors made during the course of the trial, proper objections must be interposed and preserved in the record before it will be the basis of reversal in instances where no fundamental right of the defendant has been violated. Also, we cite the frequently announced rule by this court that evidence of separate and similar offenses is admissible when it is material and proper to show (1) Motive, (2) Intent, (3) Absence of mistake or accident, (4) Identity of the person charged with the commission of the crime for which an accused is put on trial, and (5) Common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other. It is necessary when the above rule is applicable to limit and instruct the jury as to the purpose of allowing such evidence *and one desiring such instruction should submit requested instructions to the trial court in this connection.*" (Emphasis added)

The record does not reflect that the defendant requested an instruction limiting the purpose of the admission of evidence of other offenses. Had the defendant requested such instruction and the trial court failed to so instruct, the same would constitute reversible error.

In conclusion, we observe that the evidence of defendant's guilt is overwhelming. Although no grounds for reversal, we are of the opinion that the trial court's failure to limit the purpose of the admission of

other offenses dictates that the sentence be modified. The judgment and sentence is, accordingly, modified to a term of two and one-half (2½) years and as so modified, is affirmed. Modified and affirmed.

BLISS, P. J., and BRETT, J., concur.