Curtis WADE, Jr., Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–79–512.

Court of Criminal Appeals of Oklahoma.

Feb. 3, 1981.

As Corrected Feb. 13, 1981.

Jan Eric Cartwright, Atty. Gen., Carol Elaine Alexander, Asst. Atty. Gen., Susan M. Otto, Legal Intern, Oklahoma City, for appellee.

Gary Peterson, Deputy Appellate Public Defender, Norman, for appellant.

OPINION

BUSSEY, Judge:

Appellant, Curtis Wade, Jr., was charged, tried by jury and convicted of Pointing a Weapon at Another, After Former Conviction of a Felony, in violation of 21 O.S.1971, §§ 1289.16 and 51 in Oklahoma County District Court, Case No. CRF–78–4888. He was sentenced to fifteen (15) years imprisonment and has perfected an appeal to this Court.

The prosecution introduced evidence of the following: On the 19th day of November, 1978, the complaining witness, Charles Murphy, was traveling alone, north bound, on Interstate Highway 35 near Ardmore, Oklahoma. He stopped to render assistance to the occupants of a vehicle disabled by a flat tire. Two men and two women got into his car for a ride to a service station. Appellant and Gina Foster sat in the front seat with Murphy while the other man and woman sat in the back. Within a short time, Murphy began to get nervous about the situation. When the group stopped at a service station at the next exit appellant had barely stepped out of the vehicle when he got back in, stating that the station did not have tires. Murphy also noticed that his passengers had not brought a tire rim on which a new tire could be mounted. In an effort to be rid of them, he falsely stated that he had to hurry to Oklahoma City to keep an appointment with his brother. However, appellant said that he had a tow truck in Oklahoma City with which he could return for his vehicle, so Murphy agreed to drive on.

Murphy sped along the interstate highway hoping to be stopped by a highway patrolman, which in fact occurred. When he related his apprehension to the trooper, the passengers were called back to the cruiser where the trooper told them that he would give them a ride if the witness refused to. At this, Murphy relented and the group continued on toward Oklahoma City. When Murphy pulled off the highway in far northeast Oklahoma City near a truck stop on the pretense of meeting his brother, appellant produced a sawed-off rifle which he pointed at the witness, instructing him to drive on. As they drove, appellant told his male companion to keep the girls' heads down so they would not see the route being taken. Appellant also stated that had Murphy not agreed to drive the group on to Oklahoma City, he would have killed the highway patrolman.

Finally, east of the town of Arcadia, Oklahoma, appellant ordered Murphy to stop the car on the roadside. However, as appellant stepped out of the passenger side front door Murphy stepped on the accelerator and caused the vehicle to speed off, leaving appellant behind. Murphy saw that the man in the back seat was pointing a gun at his head, so he reached back and grabbed at the gun. As the two men struggled, Murphy also struggled with Gina Foster for control of the vehicle. Murphy managed to send the car into a roll, and he escaped from the wrecked vehicle before the others could react. He crossed a small wooded area and flagged down a passing motorist who took him to a service station where police were notified.

Gina Foster's testimony for the State generally corroborated that of Murphy with the following additions: The group was traveling from Houston, Texas, and had the one weapon, a sawed-off rifle, in their possession. The man in the back seat had quietly passed the gun to the appellant in the front seat during the trip with Murphy toward Oklahoma City. Before appellant exited the vehicle, he passed the rifle to the man in the back seat. While the driver and the second man struggled over the gun, it went off. After the complaining witness

fled the scene of the car wreck, a passing motorist stopped to render assistance, whereupon the appellant pointed the rifle at the motorist and ordered him out of the car. However, the motorist sped off. The group later buried the weapon, which has not been recovered, in a field and Foster persuaded appellant to surrender to police the next day. Gina Foster also testified that she did not expect to do any jail time after her testimony in court.

Allen Smith, the passing motorist referred to by Foster, testified that one of the group of four people at the scene of the wreck pointed a rifle at him and told him to get out of his car. The witness sped off instead but, since the group appeared to be heading in the direction of witness' in-laws' nearby residence, he turned his vehicle about and drove past the group again to reach the house and, as he did, the rifle was fired at him.

An expert witness testified that a small caliber firearm had been discharged inside Murphy's car into the roof of the vehicle.

After the state rested, the defense rested without putting on any evidence in stage one of the bifurcated trial.

■ Appellant contends as his first assignment of error that evidence of other crimes was improperly admitted at trial. He first complains of the use of his remark that he would have killed the highway patrolman. However, Murphy's testimony on this point was received without objection, while an objection on a different ground to similar testimony by Foster was sustained and the jury admonished. Moreover, this evidence was admissible either as the res gestae of the offense, see *Ray v. State*, 525 P.2d 1224 (Okl.Cr.1974), and see generally *United States v. Beechum*, 582 F.2d 898, 912 (5th Cir. 1978), or as showing the requisite criminal intent: Section 1289.16 requires that the act be done with at least one of several specified intents or purposes, including to threaten, or to injure by mental or emotional intimidation. The suggestion that the probative value was outweighed by the danger of prejudice is without merit.

He next complains of attempts by the prosecutor to inquire into injuries suffered by Murphy as a result of the carwreck. However, defense objections to the questions were sustained, and defense counsel did not request an admonishment or move for a mistrial.

■ He finally complains of evidence of the attack on Allen Smith after the victim, Murphy, had escaped from the scene. Again, part of this testimony was received without objection, or was objected to and the objection sustained. However, this evidence does not appear admissible under any other-crimes theory, and resulted in error.

■ Appellant contends as his second assignment of error that the trial court erred in failing to give cautionary jury instructions concerning accomplice testimony and other-crimes evidence, although it is acknowledged that appellant did not request any such instructions. While we are of the opinion that the trial court should have given an appropriate accomplice instruction, the failure to do so here was harmless in view of the overwhelming evidence of guilt, and the presence of sufficient testimony corroborating Foster. See *Plummer v. State*, 515 P.2d 256 (Okl.Cr.1973).

■ As to the other crimes claim, we are of the opinion that this case is not governed by *Burks v. State*, 594 P.2d 771 (Okl.Cr. 1979) since the trial of this cause occurred after the opinion in *Burks* but before the petition for rehearing was denied and publication. Therefore, no reversible error occurred in view of appellant's failure to request a cautionary instruction. See *Barnhart v. State*, 559 P.2d 451 (Okl.Cr.1977). However, we reserve the question of the effect of the absence of such an instruction on the assessment of punishment. See *Rathbun v. State*, 506 P.2d 983 (Okl.Cr. 1973).

■ Appellant alleges in his third assignment of error that the prosecutor's arguments deprived him of his right to a fair and impartial trial. However, in each instance complained of, either the defendant failed to object, or objections were made and sustained. At no time did the defendant request an admonishment by the court to the jury. Failure to couple an objection with a request to admonish waives any error which could have been cured by the withdrawal of the remarks. See *Utt v. State*, 595 P.2d 448 (Okl.Cr.1979) and *Wofford v. State*, 584 P.2d 227 (Okl.Cr.1978). None of the remarks complained of and objected to were so grossly improper and unwarranted that any error which might have occurred could not have been cured by a withdrawal of the remarks.

For his fourth assignment of error, appellant contends that since the sentence in the statute defining the offense, i. e., the enacting clause, also contains certain exceptions from liability, the negative of these exceptions become elements of the offense which must be pleaded in the information. He argues that since no such negative averments appear in the information in this case, no offense was made out and the District Court was without jurisdiction.

■ It is only when exceptions are incorporated in the enacting clause so as to constitute a material part of the definition of the offense that they need be negatived in the information. See *Young v. City of Tulsa*, 563 P.2d 156 (Okl.Cr.1977), *Groskins v. State*, 52 Okl.Cr. 197, 4 P.2d 117 (1931) and *United States v. Cook*, 17 Wall. 168, 84 U.S. 168, 21 L.Ed. 538 (1872).

The statute reads as follows:

"Section 1289.16 Pointing Firearms

It shall be unlawful for any person to willfully or without lawful cause point a shotgun, rifle or pistol, or any deadly weapon, whether loaded or not, at any person or persons for the purpose of threatening or with the intention of discharging the firearm or with any malice or for any purpose of injuring, either through physical injury or mental or emotional intimidation, or for purposes of whimsy, humor or prank, *but not to include the pointing of shotguns, rifles or pistols, by law enforcement authorities in the performance of their duties, members of the state military forces in the form of*

the Oklahoma Army or Air National Guard in the performance of their duties, members of the federal military reserve and active military components in the performance of their duties, or any federal government law enforcement officer in the performance of his duty, or in the performance of a play on stage, rodeo, television or on film, or in defense of one's person, home or property." Emphasis added.

■ We are of the opinion that the definition of the offense may be alleged without any reference to the exceptions and they are matters of defense that are to be pleaded by the accused. This assignment of error is without merit.

As his final assignment of error, appellant challenges the evidence presented in the second stage, or punishment phase, of his trial. He first contends in this regard that documents presented to prove the alleged prior Louisiana felony conviction were not properly authenticated under 12 O.S.1971, § 485, the so-called "triple certification" provision, which was not expressly repealed upon enactment of the new evidence code. He reasons that though the documents be sufficiently authenticated under the self-authentication provision of the Oklahoma Evidence Code, 12 O.S.Supp.1978, § 2902, the second stage of the jury trial of a habitual offender charge is a sentencing proceeding, and "sentencing proceedings" are exempted from the coverage of the code, 12 O.S.Supp.1978, § 2103 B 2.

■ However, the rationale for exempting sentencing proceedings from the rules of evidence is to provide the widest range of relevant information to guide the judge in imposing sentence. See *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337, (1949), and Whinery, *The Oklahoma Evidence Code—The Background, And Overview And The General Provisions Of Article I*, 32 Oklahoma L.R. 259. We are convinced that second stage jury proceedings are not within the reason for the rule. See *State v. Cooper*, 161 Mont. 85, 504 P.2d 978 (1972); and *Specht v. Patterson*, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967). This issue was anticipated in *Clonce v. State*, Okl.Cr., 588 P.2d 584 (1978):

"... However, we would point out affective October 1, 1978, under the New Evidence Code of 12 O.S., Ch. 37, § 902, (S.B.No. 276 effective October 1, 1978) [12 O.S.Supp.1978, § 2902] that the certified copy of the judgment and commitment from the Federal Court in Oklahoma without the triple certification, would be admissible."

Therefore, this first contention is without merit.

Appellant's second contention under his final assignment of error is that the amended bill of information and court minute introduced to prove the Louisiana prior conviction were inadmissible hearsay. He reasons that such records are hearsay unless within the hearsay exception for final judgments found at 12 O.S.Supp.1978 § 2803(22), and a "final judgment" is a writing stating the date it was rendered, the name of the defendant and the offense for which sentence is imposed, and reciting that judgment was pronounced in accordance with the verdict, and bearing the signature of the judge, citing *Greenwood v. State*, 375 P.2d 661 (Okl.Cr.1962). Since the court minute here does not in terms state that the judgment was pronounced in accordance with the verdict, nor is signed by a judge, it is urged that it is hearsay not within an exception.

■ We note that the *Greenwood* definition urged by the appellant actually speaks to the requisites for a judgment sufficient to support a direct appeal to this Court. Moreover, Section 2803(22) applies by its terms to a final judgment offered to prove a fact essential to the judgment. This is not the case where the fact to be proved is the historical occurrence of the conviction for habitual offender purposes. This evidence is more properly entered under the Section 2803(8) exception for public records, where no issue as to the definition of judgment is presented. See *State v. Stone*, Ariz.App., 122 Ariz. 304, 594 P.2d 558 (1979).

 The use of copies of the amended bill of information and court minutes to prove the after former conviction charge is an accepted mode of evidence in Louisiana's own courts for proving habitual offender charges. See *State v. Barrow*, 352 So.2d 635 (La.1977), and *State v. Lee*, 364 So.2d 1024 (La.1978). A judge's signature is not required under Louisiana laws and the absence thereof in no manner effects the efficacy of the court minute. See *Calhoun v. Serio*, 161 So. 773 (La.App.1935), and *Lopez v. Southern National Gas Company*, La. App., 287 So.2d 211 (1974). The minute is of course in writing, recites that sentence was rendered on the 20th day of June, 1975, states that appellant, named in the minute, is the person against whom sentence is rendered, states that the offense for which sentence is imposed is receiving stolen goods, and it makes apparent that sentence was rendered upon appellant's plea of guilty. It further reflects that appellant was represented by counsel, and advised of his constitutional rights before entry of his plea. We are of the opinion that, although the bill of information should have been excluded in accordance with clearly established policy in this state, see *Baker v. State*, 432 P.2d 935 (Okl.Cr.1967), the court minutes are sufficient to establish the fact of prior conviction. Accordingly, we are of the opinion that, aside from the possible effect of the erroneously admitted information on the assessment of punishment, this argument is without merit.

 In conclusion, we have noted that certain error occurred at trial, to wit, the improper admission of evidence of another crime, the absence of a cautionary instruction on other crimes evidence, and the introduction of the bill of information during the second stage, which although not effecting the finding of guilt in view of the overwhelming and uncontradicted evidence, may have influenced the punishment. Therefore, it is the order of this Court that the sentence be modified from fifteen (15) to ten (10) years, and as so modified, the judgment and sentence is affirmed.

BRETT, P. J., concurs in results.

CORNISH, J., concurs.