# United States Court of Appeals
## For the First Circuit

No. 02-1216

UNITED STATES OF AMERICA,

Appellant,

v.

REGINALD SHEPARD,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Boudin, Chief Judge,

Torruella and Lipez, Circuit Judges.

Cynthia A. Young, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief for appellant.
Linda J. Thompson, with whom John M. Thompson and Thompson & Thompson, P.C. was on brief for appellee.

November 3, 2003

**BOUDIN**, **Chief Judge**.  Under the amended Armed Career Criminal Act ("the Act"), 18 U.S.C. § 924(e) (2000), a 15-year mandatory minimum sentence is required for anyone convicted as a felon in possession of a firearm who has three or more prior convictions for a "violent felony" or "serious drug offense."  This appeal by the government concerns the proper application of these labels to Reginald Shepard's prior guilty pleas under state burglary statutes.  The issue is a recurring one.

On March 3, 1999, Shepard pled guilty to a charge of violating the federal statute prohibiting a felon from possessing a firearm, 18 U.S.C. § 922(g)(1) (2000).  Shepard had in fact sold a Glock 17, 9 mm pistol and ammunition to an undercover federal agent at South Station in Boston.  Shepard already had on his record dozens of prior state convictions, including eleven for breaking and entering.  The government sought to have Shepard sentenced as an armed career criminal, arguing that at least five of these breaking and entering convictions were violent felonies under the Act.

Under the Act, the phrase "violent felony" is not limited to crimes in which violence actually occurs; instead, the phrase is defined to include inter alia "any crime punishable by imprisonment for a term exceeding one year" that "is burglary, arson or extortion . . . or otherwise involves conduct that presents a serious potential risk of physical injury to another."  18 U.S.C.

§ 924(e)(2)(B)(ii).  In Taylor v. United States, 495 U.S. 575 (1990), the Supreme Court held that Congress intended "burglary" to mean any crime under state law, however denominated, that incorporated the elements of what the Court described as "generic burglary"--unlawful entry into "a building or other structure, with intent to commit a crime."  Id. at 598-99.

At Shepard's initial sentencing, the five convictions at issue were under one or the other of two Massachusetts statutes that forbid breaking and entering a "building," "ship," "vessel" or "vehicle" with intent to commit a felony.[1]  In each of the state cases, the complaint merely charged Shepard in the boilerplate language of the statutes, leaving it unclear just what kind of structure Shepard had entered.  Thus, the complaints alone did not reveal whether Shepard had broken into a building or some lesser enclosure such as a car or boat.

The "complaint" under Massachusetts procedure is the final step in the charging process, roughly equivalent to a federal information.  1 Massachusetts Criminal Practice § 4.1-4.2 (1998). Issued by a magistrate, the complaint is based on a complaint application normally filed by a police officer and likely to

---

[1]One of the statutes says "motor vehicle" instead of "vehicle" but otherwise they are similar; the difference between them is that one statute, Mass. Gen. Laws ch. 266, § 16 (2000), is directed to breaking and entering by night and carries a 20 year maximum, while the other, ch. 266, § 18, has only a 10 year maximum and embraces breaking and entering during the day as well as non-forcible entry into a dwelling at night.

incorporate or be accompanied by a police report.  Id.  The application is customarily sworn and is automatically given to defendants at their arraignments.  Mass. Gen. Laws ch. 276, § 22 (2000); Super. Ct. Standing Order 2-86; 1 Massachusetts Criminal Practice § 4.2, 16.5(C).  Courts in Massachusetts can presume that defendants know the information contained in police reports.  See Commonwealth v. Brown, 748 N.E.2d 972, 981 (Mass. App. Ct. 2001).

Forewarned by an earlier decision of this court, United States v. Dueno, 171 F.3d 3 (1st Cir. 1999), the government secured the state court files from Shepard's earlier convictions, presented certified copies, and argued that the complaint applications and police reports contained in the state court files showed that Shepard's prior convictions were for entries into buildings and so constituted generic burglaries under Taylor.  Taking these documents at face value, they showed (with varying degrees of elaboration) the following as to the charges that had led to Shepard's guilty pleas:

> May 1989.  Break in at 30 Harlem St. in Boston; defendant discovered by an inhabitant in the pantry.

> March 1991.  Entry into 550 Arsenal St in Watertown; defendant in back room of store.

> July 1991.  Entry into 258 Norwell St. in Boston; defendant found in hallway with property taken from a broken-into apartment.

February 1994. Attempted entry into 145 Gallivan Blvd; defendant found with arms through broken glass window.[2]

The district court ruled that the complaint applications and police reports could not be considered and declined to sentence Shepard under the Act, imposing instead a sentence of 46 months (which included a two-level upward departure). United States v. Shepard, 125 F. Supp. 2d 562, 572 (D. Mass. 2000) ("Shepard I"). On the government's appeal, this court reversed, ruling that there was no "absolute bar" to consideration of police reports and complaint applications; the question, said the panel, was whether, in the contemporaneous understanding of the state and the defendant, Shepard had pled guilty in the breaking and entering cases to entry of a building (rather than, say, a motor vehicle). United States v. Shepard, 231 F.3d 56, 67 (1st Cir. 2000) ("Shepard II"), cert. denied 534 U.S. 829 (2001).

On remand, the government filed additional complaint applications or police reports from state court files evidencing two additional convictions. According to these documents, one conviction was for a February 1981 break in to the Jamaica Plain

---

[2]At the first sentencing hearing the government argued that Shepard's conviction for an April 1989 break in to Crispus Attucks Children's Center building should also be counted as generic burglary. Since the government did not provide the police reports or complaint applications for this conviction, only the PSR, it simplifies our analysis if we ignore this conviction for the present case.

-5-

High School gymnasium and the theft of property; the other was an attempted break in at 446 Shawmut Avenue where Shepard was found on the fire escape next to a window that had been pried open with a knife.

Shepard submitted an affidavit saying essentially the same thing as to all of the alleged predicate charges:

> I am sure that, at the time of [the state court plea hearing], the judge did not read this Incident report to me and did not ask me whether or not the information contained in the incident report was true. I did not admit the truth of the information contained in the Incident report as part of my plea and I have never admitted in court that the facts alleged in the reports are true.

After these submissions, the district court imposed the same sentence as before. United States v. Shepard, 181 F. Supp. 2d 14, 18 (D. Mass. 2002) ("Shepard III"). The court emphasized Shepard's affidavit denials that he had ever admitted in court the underlying facts of the crimes and concluded that "the police reports did not provide reliable evidence on the central question, what did the defendant plead to in the state court?" Id. at 17, 19-20. The government again appeals, arguing that complaint applications and police reports establish that Shepard pled guilty to breaking into buildings.

There is surely an air of make-believe about this case. No one, and this includes Shepard and the district court, has seriously disputed that Shepard in fact broke into half a dozen or more buildings and was consequently convicted upon pleas of guilty

-6-

under the two Massachusetts statutes in question. Further, his string of convictions--which the district court described as "an 18-year crime spree," Shepard I, 125 F. Supp. 2d at 565--shows that he is just the kind of burglar whom Congress had in mind in adopting the tough 15 year minimum sentence for armed career criminals. Taylor recounts in numbing detail the legislative history showing Congress' aim to apply the Act to repeat burglars later convicted of a gun crime. Taylor, 495 U.S. at 581-90.

Congress' rationale was that a large percentage of all crimes are committed by repeat offenders; that many of these crimes have at least a potential for violence (e.g., the burglar who encounters a resident in the house being burgled); that after a series of these crimes, the defendant is fairly described as a repeat offender; and that when a repeat offender then also commits a federal gun crime, it is time for that felon to serve a long prescribed minimum sentence. Taylor, 495 U.S. at 581-88. Whatever the force of the theory, there is no doubt that Congress intended that it be implemented.

Yet Taylor, while construing the term "burglary" broadly (based on common usage rather than common law), narrowed the Act dramatically in another respect. Partly for practical reasons of administration, Taylor forbade a de novo inquiry by the sentencing court into what conduct the defendant actually engaged in incident to the predicate offense, and focused instead on whether the crime

of conviction was _necessarily_ a generic burglary (or some other crime of violence).  _Taylor_, 495 U.S. at 599-602.  Admittedly, this simplifies administration if the state statute describes generic burglary and nothing else.

The problem--which _Taylor_ recognized and addressed--is that state burglary statutes are often drafted to embrace both conduct that does constitute generic burglary and conduct that does not (_e.g._, building versus vehicle[3]).  _Taylor_, 495 U.S. at 599-602. _Taylor_ makes clear that where (as here) the statute embraces two different crimes or categories of criminal conduct, the defendant will be deemed guilty of a violent felony if one of the two corresponds to generic burglary _and_ that is the crime of conviction in the particular case.  _Id._ at 602.

But how can one tell whether generic burglary was the crime of conviction if one does not look at what actually happened at the scene of the crime?  _Taylor_ said that the sentencing court can still look at the charging papers and jury instructions, which

---

[3]Breaking and entering a vehicle is not generic burglary under _Taylor_'s definition.  495 U.S. at 598-99.  Our circuit has never squarely decided whether burglary of vehicles or boats might still be grounds for enhancement under the Act because they "involve[] conduct that presents a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B)(ii), although prior dicta have suggested that they do not qualify as violent felonies, _see, e.g._, _Shepard II_, 231 F.3d at 59.  Since the parties do not dispute this point, we assume it for present purposes, reserving always the peculiar problems posed by houseboats and camper vans, _see_ _United States_ v. _Peterson_, 233 F.3d 101, 110 (1st Cir. 2000); _United States_ v. _Sweeten_, 933 F.2d 765, 770-72 (9th Cir. 1991).

-8-

together may well identify the crime of conviction. Taylor, 495 U.S. at 602. The Court did not explicitly rule out attention to other court-related documents or say just how guilty pleas should be parsed. Until the Supreme Court addresses the open issues, we must use our own reasoning, keeping faith with our own prior precedents.

Let us start with basics. Under Taylor, a burglary conviction by a jury would count as a crime of violence under the Act if the indictment and instructions made clear that the burglary was of a house. Taylor, 495 U.S. at 602. The same would be true if instead the defendant pled guilty to such indictment naming a house as the burgled location.[4] It would also be true, as this court held in United States v. Harris, 964 F.2d 1234 (1st Cir. 1992), even if the indictment were silent as to the venue so long as the case files showed that the plea was to burglary of a house. Id. at 1236-37; accord United States v. Coleman, 158 F.3d 199, 202-03 (4th Cir. 1998).

---

[4]All twelve circuits that have addressed the issue have agreed that Taylor analysis applies after a guilty plea, even though Taylor only explicitly explained how to resolve ambiguity when the prior convictions were obtained after jury trials. See United States v. Adams, 91 F.3d 114, 116 (11th Cir. 1996), cert. denied 519 U.S. 1047 (1996) (collecting and joining decisions from the 1st, 5th, 6th, 7th, 8th, 9th, and 10th Circuits); United States v. Hernandez, 218 F.3d 272, 278 (3rd Cir. 2000); United States v. Hill, 131 F.3d 1056, 1064 (D.C. Cir. 1997) (applying parallel U.S.S.G. career criminal provision); United States v. Palmer, 68 F.3d 52, 59 (2nd Cir. 1995); United States v. Cook, 26 F.3d 507, 509 & n.5 (4th Cir. 1994).

In Harris, Judge (now Justice) Breyer discussed the exact situation before us: a defendant who has pled guilty to violating a broadly worded statute that included both situations that would and situations that would arguably not be violent felonies. Harris, 964 F.2d at 1236-37. As with Shepard's complaint, the indictment in Harris repeated the statutory boilerplate, leaving it unclear what category of offense was at issue. Id. The Harris court explained:

> In such a case, we believe it would be appropriate for the sentencing court to look to the conduct in respect to which the defendant was charged and pled guilty, not because the court may properly be interested (in this context) in the violent or non-violent nature of that particular conduct, but because that conduct may indicate that the defendant and the government both believed that the generically violent crime ("building"), rather than the generically non-violent crime ("vehicle") was at issue.

Id. at 1236.

Judge Breyer then described the presentence report's summary of the case files from Harris's state convictions; these files (just like the complaint applications and police reports in Shepard's case) made clear that the crimes were violent felonies-- in Harris, that the defendant had twice physically assaulted the victim. Harris, 964 F.2d at 1236-37. On this basis alone, this court concluded that Harris's prior convictions were properly treated as violent felonies and (together with a third crime of

-10-

violence) justified the 15 year minimum sentence prescribed by the Act.  Id. at 1237.

In United States v. Dueno, 171 F.3d 3 (1st Cir. 1999), this court arguably limited Harris in one respect.  In Dueno, the government sought to characterize the predicate guilty pleas based not on the original police reports in the state court case files but rather upon the federal presentence report's description of the underlying criminal conduct.  Id. at 6-7.  This had also been true in Harris but there no one had contested the reliance on the PSR.  In Dueno, the court--though describing the issue as a close one-- declined to allow the PSR alone to resolve the issue.  Id. at 7.

The Dueno court endorsed Harris's general approach--as it had to do absent en banc review, see Irving v. United States, 162 F.3d 154, 160 (1st Cir. 1998) (en banc), cert. denied 528 U.S. 812 (1999)--but it noted that not a single document from the original state court case files had been submitted for consideration, nor was there any other "account of what took place at Dueno's plea hearing."  Dueno, 171 F.3d at 7.  Absent any indication that the PSR accurately repeated the information from the original state court documents, the Dueno court rejected reliance on the PSR's description of the criminal conduct to rescue an enhanced sentence whose primary ground was admittedly in error.  Id.

Our en banc court sought to clarify our stance on presentence reports in a published order released shortly after Dueno.[5] We explained:

> Our cases have approved resort to pre-sentence reports but only to determine the character of the criminal offense for which the defendant was convicted (not whether violence was or was not used on the particular occasion) [citing Harris], where that determination cannot be made from the statutory language itself or from the charging documents, and only where the report was sufficiently reliable on this issue [citing Dueno].

United States v. Sacko, 178 F.3d 1, 7-8 (1st Cir. 1999) (en banc order, June 16, 1999). While this order does not spell out what makes a PSR "reliable," and other circuits are split on this issue, compare United States v. Adams, 91 F.3d 114, 116 (11th Cir. 1996) (relying on PSR), with United States v. Potter, 895 F.2d 1231, 1238 (9th Cir. 1990), cert. denied 497 U.S. 1008 (1990) (generally rejecting PSR), it does make clear two things: first, presentence reports can be used in some situations; second, Harris remains solid precedent in this circuit even after Dueno.

In Shepard's case the reliability of PSR descriptions is not even an issue, for the government secured the original state

---

[5]This order was in response to the government's motion for a rehearing en banc in United States v. Sacko, 178 F.3d 1, 7 (1st Cir. 1999). Sacko was released three days before Dueno and was arguably in tension with the later opinion. Since the Sacko panel released an erratum altering the language in Sacko, our court denied the petition for rehearing, but took the opportunity "to make clear the en banc court's view as to what is now settled law in this circuit." Sacko, 178 F.3d at 7.

court case files from six of Shepard's prior convictions, found in them the complaint applications and police reports that had prompted the complaints, and made the latter available to the federal sentencing court (and so also to us). And Shepard has been given a full opportunity (by the remand in Shepard II) to explain any circumstance surrounding the pleas that might defeat the natural inference that the pleas were to the crimes described in the case files.

Of course, it is barely possible that someone in Shepard's position might have pled guilty, not to the charge that underlay the complaint (namely, burglary of a building), but to the burgling of some other venue such as a boat arguably not within the definition of generic burglary. Conceivably, at the plea hearing someone might have explained in mitigation that 258 Norwell Street was actually a boat dock address or, in a different instance, that Shepard's target was not the Jamaica Plain High School gymnasium but merely a car parked in front.

This, we say, is conceivable but highly unlikely; and it is even less likely--to the point of nearly impossible--that it or anything like it happened for most of Shepard's predicate pleas, and that the police reports were mistaken as to venue for four or more of the six crimes. Nor on remand did Shepard offer any evidence that this had happened; he said only that he had not specifically admitted in open court to breaking into houses and

that the underlying police reports were not read to him at the plea hearings.

Against this background, it is "clearly erroneous" to find that Shepard did not plead guilty to at least three burglaries of buildings. Absent other evidence of peculiar circumstances, there is a compelling inference that the plea was to the complaint and that the complaint embodied the events described in the application or police report in the case file. If there were countervailing evidence to defeat the inference, we would defer to any reasonable interpretation of the conflict by the trier of fact. But there is no other evidence, nor is it easily imaginable that there would be.

In Harris Judge Breyer referred to what the government and defendant "believed" to be the subject of the predicate plea; but he did not suggest that this required direct evidence of the parties' subjective states of mind. Harris, 964 F.2d at 1236. His concern was with the nature of the proceedings: in upholding the enhancement Harris relied on objective evidence to characterize the pleas--namely, on police reports in the case file. Unimpeached, those files carried the day in Harris; they do so here as well.

Our view accords with that of the Fourth Circuit in Coleman, 158 F.3d at 202-03. In Coleman, the en banc court approved consideration of the "statement of charges" filed by a "complaining witness"--Maryland's equivalent of Massachusetts's

-14-

complaint application--in order to determine whether the predicate crime qualified under the Act. <u>Id.</u> While the <u>Coleman</u> court mentioned that this document was formally considered part of the "charging papers" under Maryland law, we do not see how the label given to the document should make a difference, particularly in light of <u>Taylor</u>'s forceful rejection of the use of state labels. <u>Taylor</u>, 495 U.S. at 590-92.

Judged by what Congress wanted, this case is not a close call. If this court's precedents have confused matters, that is our own fault but it is no reason to perpetuate confusion. <u>Harris</u>, with the reliability qualification adopted by <u>Dueno</u> as to the PSR (a point not litigated in <u>Harris</u> and irrelevant here), is the law of this circuit until the Supreme Court or an <u>en banc</u> panel rules otherwise.[6] On remand, the district court must sentence Shepard under the Act and apply the mandatory minimum prescribed by Congress.

The sentence of the district court is <u>vacated</u> and the matter <u>remanded</u> for re-sentencing in conformity with this decision.

---

[6] In addition to the tension between the two decisions, our own prior remand in <u>Shepard II</u> may further have complicated matters by not calling attention to the <u>en banc</u> order in <u>Sacko</u>. In all events, none of this confusion is the fault of the district judge who sought conscientiously to carry out this court's earlier mandate.