PHILLIPS, Circuit Judge,
dissenting.
Though I agree with most of the majority’s well-crafted opinion, I disagree with its conclusion that Mr. Tittle’s Oklahoma statute of conviction provides means, rather than elements, for its alternative purposes and intents. Because of this view, I would apply the modified categorical approach as set out in United States v. Hood, 774 F.3d 638 (10th Cir. 2014), find that Mr. Tittle’s plea documents show that he was necessarily convicted of a predicate “violent felony,” and affirm the district court’s sentence.
BACKGROUND
In 2015, Mr. Tittle pleaded guilty to a Superseding Information charging a single violation of 18 U.S.C. § 922(g)(1).[1] Though facing a sentence under the Armed Career Criminal Act (the ACCA), 18 U.S.C. § 924(e), Mr. Tittle elected to plead guilty to the Superseding Information’s sole charge. Doing so kept Mr. Tittle from a much higher sentence had the jury convicted him on the methamphetamine charge. At sentencing, Mr. Tittle objected to his recommended sentence, contending that his Oklahoma conviction for felo-niously pointing a firearm at another person did not qualify as a predicate violent felony under the ACCA.
In 1995, the State of Oklahoma charged Mr. Tittle with “willfully, feloniously and without lawful cause pointing] a .380 caliber pistol, serial number 031625 at one Carolyn Williams, for the purpose of threatening and intimidating her, and with the unlawful, malicious and felonious intent then and there on the part of said defendant to injure the said Carolyn Williams physically, or for the purpose of mental or emotional intimidation, or whimsey [sic], humor, or prank[.]” App., Vol.l at 78. In his written “Summary of Facts” in support of his guilty plea to this charge, Mr. Tittle wrote, “I was struck in the head with a skillet by Carolyn Ann Williams and then I turned and pointed a .380 pistol in [stricken word] direction unknown.” App., Vol. 1 at 94. Mr. Tittle ran a line through this portion of his written statement. In un-stricken language, Mr. Tittle continued, “I pointed a weapon at Carolyn A Williams and threatned [sic] her crazy[2] life DTT.” Id.
DISCUSSION
1. Elements or Means?
Now the question is whether Mr. Tittle’s Oklahoma conviction for feloniously pointing a pistol at Ms. Williams qualifies as a violent felony under the ACCA. It does so if it has “as an element the use, attempted use, or threatened use of physical force against the person of another.” 18 U.S.C. § 924(e)(2)(B)®. The majority rules that the purpose and intent alternatives listed in Okla. Stat. tit. 21 § 1289.16 are means of committing the crime, not elements. This, the majority concludes, requires it to apply the categorical approach and go no further. Then, under the categorical ap *1277 proach, the majority declares that the Oklahoma crime doesn’t qualify as a predicate violent felony because one of the means — whimsy, humor, or prank — does not involve the threatened use of violent physical force. Majority Op. at 1267.
The main issue before us is whether Hood remains good law. As the majority notes, we declared in Hood that the purpose and intent alternatives in Okla. Stat. tit. 21, § 1289.16 are elements, freeing us to apply the modified categorical approach. Hood, 774 F.3d at 645. Mr. Tittle argues that Mathis v. United States, — U.S. -, 136 S.Ct. 2243, 195 L.Ed.2d 604 (2016), has abrogated Hood, rendering the alternatives listed in § 1289.16 as means rather than elements. If that’s so, we cannot apply the modified categorical approach to resolve whether Mr. Tittle was necessarily convicted of an alternative requiring a purpose other than whimsy, humor, or prank.
In Mathis, the Court added another level atop its framework used to determine what convictions count as predicate violent felonies under the ACCA — whether the statute of conviction lists alternative means or alternative elements. Hood had no need to consider that question. See United States v. Trent, 767 F.3d 1046, 1058-61 (10th Cir. 2014) (abrogated by Mathis, — U.S. -, 136 S.Ct. 2243, 2251 n.1, 195 L.Ed.2d 604) (holding that modified categorical approach applied whether a statute’s alternatives were either elements or means). In determining where § 1289.16 stands after Mathis, it helps to examine that statute’s language in place when Mr. Tittle committed the crime. I have marked the purpose and intent alternatives with my own brackets and numbers separating them:
It shall be unlawful for any person to willfully or without lawful cause point a shotgun, rifle or pistol, or any deadly weapon, whether loaded or not, at any person or persons [1] for the purpose of threatening or [2] with the intention of discharging the firearm or [3] with any malice or [4] for any purpose of injuring, either through physical injury or mental or emotional intimidation, or [5] for purposes of whimsy, humor or prank....
Okla. Stat. tit. 21 § 1289.16 (1995). In his written plea statement, Mr. Tittle admitted the first alternative — pointing a gun at Carolyn Williams and threatening to kill her. We must decide whether the purpose and intent alternatives are means under Mathis, compelling the categorical approach and cordoning from the ACCA’s reach Mr. Tittle’s violent felony that his own admission proves he necessarily committed.[3]
2. Mathis and Shepard
In Mathis, the Court considered whether a conviction of this Iowa burglary statute qualified as a violent felony under the ACCA:
Any person, having the intent to commit a felony, assault or theft therein, who, having no right, license or privilege to do so, enters an occupied structure, such occupied structure not being open to the public, or who remains therein after it is closed to the public or after the person’s right, license or privilege to be there has expired, or any person having such intent who breaks an occupied structure, commits burglary.
*1278 Iowa Code § 713.1. A separate section of the Iowa statutes defines “occupied structure” as follows:
An “occupied structure” is any building, structure, appurtenances to buildings and structures, land, water or air vehicle, or similar place adapted for overnight accommodation of persons, or occupied by persons for the purpose of carrying on business or other activity therein, or for the storage or safekeeping of anything of value. Such a structure is an “occupied structure” whether or not a person is actually present. However, for purposes of chapter 713, a box, chest, safe, changer, or other object or device which is adapted or used for the deposit or storage of anything of value but which is too small or not designed to allow a person to physically enter or occupy it is not an “occupied structure”.
Id. § 702.12. •
Because occupied structures such as “land, water or air vehicles” are not buildings or structures, they do not meet the location element of generic burglary as referenced in Taylor v. United States, 495 U.S. 575, 599, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) (concluding that generic burglary has an element of “unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime”). As does Iowa Code § 713.1, the Massachusetts statute exceeds generic burglary, covering unlawful entries into more locations than buildings and structures, that is, into a “vessel or vehicle.” Shepard v. United States, 544 U.S. 13, 31, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005).
In Shepard, because the government had no charging or plea documents that necessarily proved Shepard had been convicted of unlawful entry into a building or structure, the government attempted to show this with documents beyond those allowed in Taylor, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607. Id. at 16, 125 S.Ct. 1254. For instance, the government wanted to use police reports and complaint applications to make that showing. Id. The Court refused to extend Taylor to include these sorts of records. Id. at 26, 125 S.Ct. 1254.
I note this language from Shepard: “In this particular pleaded case, the record is silent on the generic element, there being no plea agreement or recorded colloquy in which Shepard admitted the generic fact.” Id. at 25, 125 S.Ct. 1254 (emphasis added). From this, we can see that the Shepard Court treated buildings, structures, vehicles, and vessels as separate elements. That leaves us two questions: (1) did Shepard survive Mathis?, and (2) if it did, is Okla. Stat. tit. 21 § 1289.16 more like the Massachusetts breaking-and-entering statute in Shepard, or more like the Iowa burglary statute in Mathisl
For the first question, I note that Mr. Tittle does not contest that Shepard survived Mathis. This makes sense because Mathis neither claims to overrule Shepard nor casts doubt upon it. In fact, as I read Mathis, it approves of Shepard’s use of the modified categorical approach, because that approach is “for use with statutes having multiple alternative elements.” Mathis, 136 S.Ct. at 2249 (emphasis added) (citing Shepard, 544 U.S. at 26, 125 S.Ct. 1254). And the Court’s language was no accident. In contrasting the Iowa burglary statute to the Massachusetts statute, Mathis declared that “[tjhis case [Mathis] concerns a different kind of alternatively phrased law: not one that lists multiple elements disjunctively, but instead one that enumerates various factual means of committing a single element.” Id. (citing Schad v. Arizona, 501 U.S. 624, 636, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991)).[4]
*1279 Addressing the second question, I conclude that Oklahoma’s statute is more like Massachusetts’s statute, not Iowa’s. Neither the Massachusetts statute nor the Oklahoma statute contains a broad statutory element with separately listed statutory examples, as does the Iowa statute with “occupied structures.” And, as seen below, Mathis itself recognized the importance of this distinction.
3. The Mathis Tools
In Mathis, the Court set out a framework to determine whether statutory alternatives are elements, or instead means. The framework breaks broadly into two general categories — state-law sources and non-state-law sources. Each has subparts to use in resolving the elements/means issue.
a. State-Law Sources
The first Mathis tool asks whether the courts of the State of conviction have determined that the statutory alternatives in question are means or elements. In Mathis, beating the odds, the Court found an Iowa Supreme Court case holding that the statutorily listed burglary locations are means of committing the crime.[5] Id. at 2256 (citing State v. Duncan, 312 N.W.2d 519, 523 (Iowa 1981)). In particular, the Iowa court held that the statutorily defined list of “occupied structures” are “ ‘alternative method[s]’ of committing one offense, so that a jury need not agree whether the burgled location was a building, other structure, or vehicle.” Id. (quoting Duncan, 312 N.W.2d at 523). This meant that the jury could convict Duncan of a single burglary charge even if the jurors disagreed about whether he had burgled the marina or, instead, a boat.[6] See Iowa Code § 702.12. So Mathis had its answer at the start of its analysis — its conclusion was “easy” because “a state court decision definitively answer[ed] the question.” 136 S.Ct. at 2256 (citing Duncan, 312 N.W.2d at 523).
Addressing this same first tool, the majority acknowledges that Oklahoma courts have not spoken so plainly. Even so, the majority cites Thompson v. State, 169 P.3d 1198 (Okla. Crim. App. 2007), for support that Oklahoma might lean toward finding the alternatives to be means and not elements. In particular, the majority relies on this sentence from Thompson: “The lan *1280 guage of § 1289.16 makes clear that this crime is about the act of pointing a firearm at another person or persons with some kind of improper purpose.” Majority Op. at 1270 (quoting 169 P.3d at 1202). I don’t see how the reference to “this crime” means much. I’d expect that a court would use those words any time it refers to a single criminal statute. Nor do I see how the reference to “some kind of improper purpose” suggests means instead of elements. After all, a court applying Shepard’s breaking-and-entering statute could just as easily have described the statutorily listed burglary places as “some kind of specified location.”
The second Mathis tool asks what the state statute’s text reveals on the elements/means question. Mathis, 136 S.Ct. at 2256. If the statute punishes statutory alternatives differently, that shows elements. Id. But if the statute’s alternatives are “illustrative examples,” that shows means. Id. (citing United States v. Howard, 742 F.3d 1334, 1348 (11th Cir. 2014)). And, finally, if the statute dictates what the prosecutor must charge, that may answer the elements/means question. Id. (citing Cal. Penal Code Ann. § 952).[7]
To support its view that the Oklahoma statute’s alternatives are “illustrative examples,” and thus means, the majority relies in part on this sentence from Wade v. State, 624 P.2d 86, 89 (Okla. Crim. App. 1981): “Section 1289.16 requires that the act be done with at least one of several specified intents or purposes, including to threaten, or to injure by mental or emotional intimidation.” Majority Op. at 1270. From this, the majority reasons that listing some purpose or intent alternatives “suggests they are illustrative examples satisfying the statute’s purpose .requirement.” Id. at 1270-71 (citing Mathis, 136 S.Ct. at 2256). I disagree. The quoted language doesn’t rule out either elements or means. If the alternatives are elements, the prosecution can charge one alternative or. more. If the prosecutor charges multiple alternatives, the verdict form will simply have to ensure that the jury unanimously finds the individual alternatives (however many) beyond a reasonable doubt. I’d expect a prosecutor to charge all of the alternatives if they’re merely means. If individual jurors may pick and choose which alternative is proved, it seemingly would favor the government to have as many choices as possible.
b. Non-State-Law Sources
The first Mathis tool under the non-state-law category looks to the record of the earlier conviction — for instance, the charging document and jury instructions. Here, Mathis declared that a defendant’s charge for burgling a “building, structure, or vehicle” would be “as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove beyond a reasonable doubt.”[8] 136 S.Ct. at 2257. Moreover, the Court said, the same would be true if the state-court documents “use a single umbrella term like ‘premises.’ ” Id. Conversely, Mathis noted, “an indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime.” Id.
*1281 Here, as the majority notes, Mr. Tittle’s charging document includes “several of the statutory purpose alternatives.... ” Majority Op. at 1271. Though Mathis tells us to pay attention to whether the State has charged more than one alternative, I can’t see how this charging language should matter so much.[9] After all, different prosecutors will charge the same crime narrowly or broadly. Here, the prosecutor charged some alternatives, and not others.[10] The prosecutor’s choices limited the State to alternatives it could rely on to convict. But had Mr. Tittle gone to trial, he could have demanded a special-verdict form itemizing each charged element (the purpose and intent alternatives), leaving a space for the jury to mark which, if any, it unanimously found applied beyond a reasonable doubt.[11] In a future case, we might see an Oklahoma prosecutor charge just one of the alternatives (say, pointing a firearm at a woman and threatening to kill her, as Mr. Tittle admitted doing). Would we switch positions there to say that the Oklahoma alternatives suddenly became elements?
In addition, though Mr. Tittle pleaded guilty, we can still look for guidance to Oklahoma’s uniform jury instruction, which provides in part as follows:
“Fifth, (for the purpose of threatening)/(with the intention of discharging the firearm)/(with any malice)/(for any purpose of injuring, either through physical injury or mental or emotional intimidation)/(for purposes of whimsy/humor/[a prank] )/(in anger or otherwise).”[12] Id. at 1270-71 (quoting Okla. Unif. Jury Inst. CR 6-42). From this language and format, the majority concludes that “[t]he instruction bunches together the statutory purpose alternatives into a single element.” Id. at 1271. It further notes that “[the instruction] does not suggest the jury would have to agree on a particular alternative to satisfy the fifth element.” Id.
I read the uniform instruction differently. If the alternatives are simply means, the instruction would have no need for the slash marks or parentheses. If the five alternatives are means, prosecutors might shortchange the State by not charging all of them. To me, the careful separation of the alternatives suggests that the government may charge one alternative alone as an element. And in that circumstance, the jury must unanimously agree that the government has proved that element beyond a reasonable doubt. Had Oklahoma meant for the five alternatives to be means, I *1282 would have expected it to list the alternatives as an unbroken group.
In addition, T see elements instead of means for two other reasons. First, the “whimsy, humor, prank” alternative is mutually exclusive from the others. Under a sensible reading, Mr. Tittle could not playfully point his gun at Ms. Williams and kiddingly say, “I’m going to kill you,” and have a purpose to threaten. A joking “threat” isn’t a threat. Second, not all of the means will apply in every instance. Here, I note that a defendant can violate the statute by pointing a dangerous weapon that is not a firearm (for instance, a knife?), yet the second alternative covers only an intent to discharge a firearm.
On this same point, as mentioned, Mathis directs us to look to whether the charging document or jury instructions “use a single umbrella term like ‘premises.’ ” 136 S.Ct. at 2257. Here, they did not — and for a reason that strongly favors the government. Unlike the Iowa burglary statute considered in Mathis, which does contain an umbrella term (“occupied structure”), Oklahoma’s statute contains no corresponding umbrella term.[13] Though an Iowa prosecutor can charge burglary of an “occupied structure,” an Oklahoma prosecutor cannot charge pointing a gun with an “improper purpose.”
CONCLUSION
Applying Mathis’s tools, I conclude that Hood correctly held that Okla Stat. tit. 21 § 1289.16 lists alternative elements. Thus, under Hood, we employ the modified categorical approach to the alternative elements, and Mr. Tittle, as part of his state plea, admitted to one of the alternative elements — pointing a firearm at Ms. Williams with a purpose of threatening her. His admission proves he necessarily was convicted of a violent felony — one with an element of the threatened use of physical force. In sum, because I conclude that the Oklahoma statute’s purpose and intent alternatives are elements, and because applying the modified categorical approach reveals that Mr. Tittle necessarily admitted to an alternate element qualifying his Oklahoma crime as a violent felony, I would affirm the district court’s sentence imposed under the ACCA.

. In exchange, the government abandoned its Superseding Indictment charging possession of methamphetamine with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and four counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

. The word crazy was stricken from the sentence but is legible.

. In Taylor v. United States, 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the Court allowed the modified categorical approach "in a narrow range of cases where a jury was actually required to find all the elements of generic burglary.” In other words, the elements-based test ensured that a defendant had necessarily been convicted of a violent felony as defined in the ACCA. Mathis goes past that useful mechanism, disallowing violent-felony convictions even when a single qualifying means is charged. See 136 S.Ct. at 2259, 2266 (Breyer, J. dissenting).

. In Schad, a 5-4 decision, the Court affirmed a first-degree murder conviction even though *1279 the jury instructions did not require the jurors to agree "whether the defendant was guilty of premeditated murder or felony murder.” 501 U.S. at 627, 111 S.Ct. 2491. The Court rejected the dissent’s view that the jury must say what separate statutory means of committing a crime it relied upon to find guilt. Id. at 635-37, 111 S.Ct. 2491. The Court reasoned that statutory alternatives are not always "independent elements defining independent crimes under state law.” Id. at 636, 111 S.Ct. 2491. The Court looked to whether a State court had determined "that certain statutory alternatives are mere means of committing a single offense, rather than independent elements of the crime.” Id. Thus, 13 years before Shepard, the Court had fully addressed the elements/means question. That it saw no need to apply this test in Shepard further supports the view that Shepard’s finding of elements remains good law.

. The Mathis dissent notes that "there are very few States where one can find authoritative judicial opinions that decide the means/element question.” 136 S.Ct. at 2264 (Breyer, J. dissenting). In fact, addressing the question in Mathis, the government found just two States whose courts had answered the elements/means question for their burglary statutes. Id.

. In Duncan, the Iowa court’s tolerance for lack of jury unanimity exceeded that at issue in Schad. In Duncan, the court permitted the jury to convict a defendant of "one overall burglary” even if jurors split over whether the defendant had burgled a marina or instead a boat in the dock, two different events. 312 N.W.2d at 520, 523-24.

. In part, this California statute requires that charging language must be "in ordinary and concise language without any technical aver-ments or any allegations of matter not essential to be proved.” Cal. Penal Code Ann. § 952. Neither party has directed us to any similar Oklahoma statute.

. This approach yields much authority to prosecutors to say what the law is. And, as we know from other ACCA cases, some prosecutors aren’t precise in their charging documents, using forms incorporating the entire criminal statute underlying the charge.

. I recognize that when "pressed” at oral argument, the government's attorney (after a long pause) agreed with the questioning judge that the Oklahoma statute provides means and not elements, relying on the charging document’s listing multiple alternatives.’ Majority Op. at 1269. I remain puzzled by this concession.

. Again, Mr. Tittle was charged with pointing a weapon at Carolyn Williams “[1] for the purpose of threatening and intimidating her,” "[2] with the unlawful, malicious and felonious intent then and there on the part of said defendant to injure the said Carolyn Williams physically, or [3] for the purpose of mental or emotional intimidation, or [4] whimsey [sic], humor, or prank.” App., Vol. 1 at 78.

. In Shepard, all five complaints from his Massachusetts burglaries "merely charged Shepard in the boilerplate language of the statutes, leaving it unclear just what kind of structure Shepard had entered.” United States v. Shepard, 348 F.3d 308, 309 (1st Cir. 2003). The two Massachusetts statutes forbade breaking and entering into a building, ship, vessel, or vehicle, with intent to commit a felony. Id.

. As noted by the majority, the last alternative — in anger or otherwise — was added- in September 1995, after Mr. Tittle’s criminal conduct on June 7, 1995. Majority Op. at 1270 n.14, 1262 n.2.

. Nor do the purpose-intent alternatives in the Oklahoma statute have a statutory umbrella term as in Mathis’s hypothetical of “a statute [that] requires use of a 'deadly weapon’ as an element of a crime and further provides that the use of a 'knife, gun, bat, or similar weapon' would all qualify.” 136 S.Ct. at 2249 (citing Descamps v. United States,U.S. -, 133 S.Ct. 2276, 2289, 186 L.Ed.2d 438 (2013); Richardson v. United States, 526 U.S. 813, 817, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999)). Mathis described this kind of list as "merely specifying] diverse means of satisfying a single element of a single crime — or otherwise said, spells out various factual ways of committing some component of the offense — a jury need not find (or a defendant admit) any particular item.” Id. For me, this says it all. Unlike this hypothetical element of "deadly weapon” or the “occupied structure” element in the Iowa statute in Mathis, Oklahoma's statute has no general statutory component.